**STATE of Missouri, Plaintiff–Respondent,**

v.

**James Patrick KENNEDY, Defendant–Appellant.**

**No. 19124.**

Missouri Court of Appeals, Southern District, Division Two.

March 22, 1995.

Gary E. Brotherton, Office of the State Public Defender, Columbia, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Traci J. Sanders, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GARRISON, Presiding Judge.

James Patrick Kennedy (Appellant) was charged with murder in the second degree and armed criminal action arising from an altercation in which Cody Warner (Cody) was killed. This appeal is from his conviction, by a jury, of the lesser included offense of involuntary manslaughter, § 565.024, RSMo 1986, and armed criminal action, § 571.015, RSMo 1986, which resulted in his being sentenced to consecutive terms of seven and eight years respectively. Appellant contends, on this appeal, that the trial court erred in not giving a self-defense instruction tendered by him and that it plainly erred in not declaring a mistrial, sua sponte, because of statements made in the State's closing argument.

On October 23, 1992, both Appellant and Cody (who was less than 21 years old) were at the Dogpatch Sunday Saloon near Dixon, Missouri. Appellant arrived alone and spent part of his time talking with Herschel Creech (Creech) at the bar. Cody was with friends and at times played pool. The evidence indicated that the only contact between them in the bar occurred when Cody came up behind Appellant and said something in what one witness described as an angry tone. Witnesses who were present were unable to hear the contents of the remarks, however. Appellant testified that Cody spoke to him for only two or three seconds but he did not recall what was said because he didn't really pay attention to it. After making the remarks, Cody then returned to his friends.

Ten to fifteen minutes later, Appellant left the bar with Creech, who had agreed to give him a ride home since he was without a vehicle. Appellant testified that when he was a few steps outside the front door of the bar, he was struck in the back of the head with what felt like some type of object. When he turned, Cody, who was standing there with nothing in his hands, began pushing him and trying to hit him. Cody was also saying "[w]hy the hell did you tell Monte Joe that? He could have kicked my a__ for what you said."[1]

According to Appellant, he told Cody that he was not going to fight him and was trying to back away. Cody, however, continued to push and hit at him until Appellant got in the passenger door of Creech's car and locked it behind him. The windows on Creech's car were up but Cody tried to open the passenger door, telling Appellant to get out. According to Appellant, he felt that Cody might try to break the window to get at him. As Cody was pulling on the door handle, Appellant felt a heavy pocket knife in the front seat which he picked up.[2]

Appellant put the knife in his pocket when Cody walked to the front of the car, although he was still demanding that Appellant get out. Creech then started to get in the driver's door in preparation for leaving, but as he did so Appellant got out of the car and called to Cody who, witnesses said, had started walking back to the front door of the bar. Appellant testified that he was going to tell Cody to meet him the next day at the Spacys' home to straighten out what he characterized as a misunderstanding. The two met, however, near the front bumper of the car and began to scuffle. When asked if he started the second altercation, Appellant said, "I wouldn't say that I started it. I think it would be more mutual." Later, when asked why he did not get back into the car when Cody came toward him, Appellant testified that "I knew there was going to be a confron-

1. This apparently referred to an incident which occurred approximately 1½ to 2½ years earlier when Appellant called the wife of Monte Joe Spacy (Dina) and told her that Cody's truck was at her house and that he (Appellant) thought Cody was breaking in. Dina, who was acquainted with Cody, called her babysitter and found

that everything was fine. In fact, Cody and his girlfriend were often at the Spacy home.

2. Creech testified that he left the knife, which he used in his job to open boxes, in the seat after work that day.

tation and I engaged." He also testified that Cody "had ahold of my neck on two different occasions," and that "I thought I might die that night." None of the other witnesses, however, testified that they saw Cody's hands on Appellant's neck. It was during this second altercation that Appellant stabbed Cody twice with the knife. When Cody fell to the ground, Appellant got on top of him and, holding his hair, struck his head on the ground several times before onlookers forced him to stop. Appellant did not dispute that his actions resulted in the death of Cody, but rather contended that he acted in lawful self-defense.

■ In his first assignment of error, Appellant contends that the trial court erred in giving Instruction No. 11, a self-defense instruction, rather than his tendered Instruction A which was on the same subject. Instruction No. 11 was patterned after MAI–CR3d 306.06 and read:

### INSTRUCTION NO 11

#### PART A—GENERAL INSTRUCTIONS

One of the issues as to Count I in this case is whether the use of force by the defendant against Cody Lee Warner was in self-defense. In this state, the use of force including the use of deadly force to protect oneself from harm is lawful in certain situations. ·

In order for a person lawfully to use force in self-defense, he must reasonably believe he is in imminent danger of harm from the other person. He need not be in actual danger but he must have a reasonable belief that he is in such danger.

If he has such a belief, he is then permitted to use that amount of force which he reasonably believes to be necessary to protect himself.

But a person is not permitted to use deadly force, that is, force which he knows will create a substantial risk of causing death or serious physical injury, unless he reasonably believes he is in imminent danger of death or serious physical injury.

And, even then, a person may use deadly force only if he reasonably believes the use of such force is necessary to protect himself.

As used in this instruction, the term "reasonable belief" means a belief based on reasonable grounds, that is, grounds which could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.

#### PART B—SPECIFIC INSTRUCTIONS

On the issue of self-defense as to Count I, you are instructed as follows:

If the defendant reasonably believed he was in imminent danger of death or serious physical injury from the acts of Cody Lee Warner and he reasonably believed that the use of deadly force was necessary to defend himself, then he acted in lawful self-defense.

The state has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. Unless you find beyond a reasonable doubt that the defendant did not act in lawful self-defense, you must find the defendant not guilty under Count I.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

Instruction A differed only in that it included the following:

#### PART C—SPECIAL MATTERS

Evidence has been introduced of the prior relationship between defendant and Cody Lee Warner, including evidence of arguments and acts of violence. You may consider this evidence in determining who was the initial aggressor in the encounter and you may also consider it in determining whether the defendant reasonably believed he was in imminent danger of harm from Cody Lee Warner.

You, however, should consider all of the evidence in the case in determining whether the defendant acted in lawful self-defense.

The Notes on Use for MAI–CR3d 306.06 state that any of the paragraphs under Part C of the pattern instruction may be given "if supported by the evidence." In the instant case, the State concedes in its brief that "there was evidence of a prior relationship in this case which could have justified submission of the omitted paragraph." The State's point relied on states that "[a]lthough the trial court erred in not giving defendant's Instruction No. A ... this error was harmless based on the evidence presented and the outcome of the trial."

■ We are not required to accept the State's concession of error. *State v. Katura,* 837 S.W.2d 547, 552 (Mo.App.S.D.1992); *State v. E.T. Swiney Motor Co.,* 244 S.W.2d 408 (Mo.App.E.D.1951). Assuming, however, without deciding, that a self-defense instruction in the form of Instruction A was authorized under the circumstances of the instant case,[3] the issue is whether the failure to give Instruction A requires a reversal. Failure to give an instruction in violation of the Notes on Use constitutes error, its prejudicial effect to be judicially determined. Rule 28.02(f).[4] Such error, however, is presumptively prejudicial unless the contrary is clearly demonstrated. *State v. Petary,* 781 S.W.2d 534, 542 (Mo. banc 1989); *State v. White,* 622 S.W.2d 939, 943 (Mo. banc 1981).

In the instant case, Instruction A would have informed the jury that prior "arguments and acts of violence" could be considered "in determining who was the initial aggressor ... and ... in determining whether the defendant reasonably believed he was in imminent danger . of harm from Cody...." The instruction, however, contained nothing about the meaning of an "initial aggressor" or its effect.

Part A[1] of MAI–CR3d 306.06, which was not included in Instruction A, is authorized if there is evidence that the defendant was the initial aggressor. It informs the jury that an initial aggressor (one who attacks or threatens to attack another person) is not justified in using force to protect himself from a counterattack which he provoked. It also includes a paragraph which indicates that the initial aggressor can regain the privilege of using force in lawful self-defense if he withdraws from the original encounter and clearly indicates his desire to end that encounter but the other person persists. See also Part B[1] of the same pattern instruction which contains specific instructions concerning the same matters.

Parts A[1] and B[1] of MAI–CR3d 306.06, concerning an initial aggressor, were not included, however, in the instruction which Appellant argues should have been given. As a result, Instruction A would not have instructed the jury about the significance of the identity of an "initial aggressor," yet it would have told the jury that it could consider evidence of the past relationship between Appellant and Cody on that issue. The jury would have been left without further guidance about the significance of an "initial aggressor" or how it could impact the verdict. Under these circumstances identifying the

---

**3.** The elements of self-defense when deadly force is used are as follows: (1) an absence of aggression or provocation on the part of the defender, (2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger of serious bodily injury or death, (3) a reasonable cause for the defender's belief in such necessity, and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and the need to take a life. *State v. Weems,* 840 S.W.2d 222, 226 (Mo. banc 1992); *State v. Bowman,* 869 S.W.2d 901, 903 (Mo.App.W.D.1994); *State v. Toland,* 708 S.W.2d 293, 294–295 (Mo.App.E.D.1986); *State v. Taylor,* 602 S.W.2d 820, 822 (Mo.App.W.D.1980). In *State v. Bowman,* it was held that the defendant was not entitled to a self-defense instruction where he was no longer in imminent danger and failed to satisfy the retreat requirement. The court said he "could have either gotten back into his car or even just stood there." 869 S.W.2d at 903. In *State v. Harris,* 717 S.W.2d 233, 236 (Mo.App.E.D.1986), the court determined that the defendant was not entitled to a self-defense instruction, saying that if he was expecting to have difficulty with the deceased his right to defend himself did not arise until he had done everything in his power to avoid the danger and that he failed to do so. In *State v. Toland,* 708 S.W.2d at 295, the defendant was not entitled to a self-defense instruction where he stabbed the victim who was pushing him, but could have avoided that result by exiting through a door.

**4.** Rule references are to Missouri Rules of Court (1993).

initial aggressor would have been meaningless and confusing to the jury.

■ Instructions should not be confusing, ambiguous, or equivocal, nor should they mislead the jury. *State v. Wilkerson*, 786 S.W.2d 236, 239 (Mo.App.W.D.1990). Failure of the trial court to give an incorrect instruction is not error. *State v. Parkhurst*, 845 S.W.2d 31, 37 (Mo. banc 1992). In the instant case, proposed Instruction A would have been inappropriate to the extent it permitted consideration of evidence on the issue of an "initial aggressor" without also including the other appropriate provisions of MAI–CR3d 306.06 Part A[1] and Part B[1] dealing with that matter. Because Instruction A would have been inappropriate for this reason, we need not consider whether it would or would not have appropriately permitted consideration of evidence of a prior relationship on the issue of whether Appellant reasonably believed he was in imminent danger of harm. Point one is denied.

■ In his second point, Appellant contends that the trial court erred in not declaring a mistrial because of the following statements by the prosecutor in closing argument:

"Now ladies and gentlemen, the Defendant has a right to subpoena witnesses too. They have a right to subpoena somebody that saw Cody Warner strike the Defendant in the back of the head. They have a right to subpoena a witness that saw the Defendant fall to the ground behind the car because he was being pushed so hard. They have a right to subpoena witnesses that saw the Defendant reach in his pocket and open the knife with one hand. Why didn't they subpoena somebody?"

Appellant argues that these statements impermissibly shifted the burden of proof to him to prove that he was acting in self-defense. In this regard, he points out that when self-defense is an issue, the State has the burden to prove, beyond a reasonable doubt, that the accused was not acting in lawful self-defense. *State v. Allison*, 845 S.W.2d 642, 645 (Mo.App.W.D.1992).

■ This point is couched in terms of the trial court committing plain error for failing to declare a mistrial sua sponte since Appellant's trial counsel did not request that relief, although he did object to the argument.[5] It is the responsibility of counsel to request a mistrial if it is warranted. *State v. Mabry*, 602 S.W.2d 1, 2 (Mo.App.W.D.1980). If no such request is made, it is assumed that counsel is satisfied with the action taken by the trial court and a subsequent complaint that additional corrective measures were needed comes too late. *Id.*

■ Notwithstanding the failure to request the relief which he now says the trial court should have granted, we have reviewed Appellant's point for plain error. Pursuant to Rule 30.20, we are authorized to consider plain errors affecting substantial rights and resulting in manifest injustice or miscarriage of justice. Plain error relief, however, is rarely granted concerning matters contained in closing arguments because trial strategy looms as an important consideration. *State v. Wood*, 719 S.W.2d 756, 759 (Mo. banc 1986).

In *State v. Mease*, 842 S.W.2d 98 (Mo. banc 1992), the defendant contended, as Appellant does in the instant case, that the State's closing argument had the effect of improperly shifting the burden of proof. There, the State argued that the defendant had raised issues but failed to present evidence on them. The Supreme Court found no error and said:

Prosecutors are entitled to argue matters supported by the evidence or matters reasonably inferable from the record. [Citation omitted.] That includes pointing out to the jury an absence of evidence to support a theory suggested by the defendant. [Citation omitted.]

*Id.* at 110.

Appellant contends, in the instant case, that his theory of self-defense was supported by evidence, including the following to which he testified: Cody hit him in the back of the head with an object when he came out of the bar; he was pushed almost to the ground trying to back off from Cody during the

---

5. The trial court, in response to Appellant's objection, said: "It's already in now. I would hope you would move away from that area...." No additional relief was requested by Appellant.

initial scuffle; and he took the knife out of his pocket and opened it during the second altercation, rather than having it in his hands when he got out of the car. This evidence, however, was largely uncorroborated by any witnesses despite the fact that there was a crowd of people in the parking lot during the fight, many of whom testified at the trial. The statements complained of in this point were nothing more than a comment on the absence of evidence or the weakness of Appellant's theory of the case. *See State v. Hunter,* 750 S.W.2d 134, 137 (Mo.App.E.D. 1988). It is also significant that Instruction No. 11 instructed the jury that "[t]he state has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense."

The declaration of a mistrial is a drastic remedy and should be used only in those circumstances in which no action short of that would remove the prejudice claimed to have occurred. *State v. Herron,* 863 S.W.2d 6, 8 (Mo.App.S.D.1993). We note in the instant case that Appellant did not request an admonition that the jury disregard the State's comments. It is appropriate to consider such a failure in deciding whether the trial court erred in failing to declare a mistrial. *Id.*

In the instant case, we are unable to conclude that the remarks complained of resulted in manifest injustice or miscarriage of justice. Appellant's second point is, therefore, denied.

Judgment affirmed.

PREWITT and CROW, JJ., concur.