**STATE of Missouri, Respondent,**

v.

**Doug COLSON, Appellant.**

**No. 20111.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 11, 1996.

Darrell Deputy, Jr., Lebanon, for appellant.

No appearance for respondent.

CROW, Judge.

A jury found Doug Colson ("Defendant") guilty of assault of a law enforcement officer in the third degree, § 565.083, RSMo 1994, and assessed punishment at one year's imprisonment in jail plus a fine in an amount to be determined by the court. The trial court imposed the jail sentence assessed by the jury, together with a fine of $1,000.

Defendant appeals, insisting the trial court erred in failing to give Instruction A, tendered by Defendant, which, according to him, "instructed the jury on the issue of self-defense." Citing *State v. Chambers*, 671 S.W.2d 781, 783[3] (Mo. banc 1984), Defendant points out that in determining whether there was sufficient evidence to entitle him to a self-defense instruction, we must view the evidence in the light most favorable to him.

On February 20, 1994, Deputy Sheriff Henry Thiesen[1] of Dallas County was on duty during the "[m]idnight to 8:00 a.m. shift." He was dispatched to contact Michaela Colson, Defendant's wife, who had phoned the sheriff's office to report that Defendant "was drunk and in possession of a firearm."

Thiesen met Mrs. Colson at the appointed site, the location of which is unrevealed by the record. Mrs. Colson told Thiesen, among other things, that Defendant "was ... at the house with the kids" and she "feared for [the] kids' safety." Thiesen told Mrs. Colson he would go there and "check on the kids' safety."

Thiesen went to Defendant's residence, approached the door, looked in, and "saw Doug sitting at the table in the trailer house." Thiesen "hollered through the [screen] door," asking permission to enter. Defendant replied, "No," but then walked to the door, which was locked, and unlocked it so Thiesen could enter.

The only account of what occurred next is furnished by Thiesen's testimony, as Defendant did not testify.

Thiesen told Defendant he (Thiesen) was there in response to a call from Mrs. Colson, and that his purpose was to check on the children. Defendant "became very angry" and came toward Thiesen. Thiesen's testimony:

"Q   What happened then?

A   He was cussing at me and telling me it is none of my business, to get out of his house at that moment. He was telling me everything he was gonna *do to me if I did not get out.* He was threatening to harm me personally.... He said that he would beat me if I did not get out of the house ... several times."

Thiesen attempted to inform Defendant that he (Thiesen) was there to investigate

1.   His surname is spelled "Tison" in the transcript, but is spelled "Thiesen" in the legal file and Defendant's brief. The State filed no brief.

*See:* § 56.060, RSMo 1994, which assigns that duty to the prosecuting attorney where, as here, a misdemeanor conviction is appealed.

and was "not going anywhere." Thiesen's testimony continued:

"Q   What happened then?

A   He came too close to me, almost up to my face, and he was shouting in my face, still threatening me, telling me to get out. And I felt I was gonna get hit.

Q   What did you do then?

A   I shoved him back.

Q   Why did you shove him back?

A   So he couldn't hit me. I thought I was gonna get hit. I didn't want him too close to me.

Q   How far did you shove him? What do you mean by 'shoved him'?

A   I used one hand, and I shoved him back. And he went far enough back to where he had to take two or three steps.

     . . . .

Q   What happened then?

A   He then charged in at me.

Q   Can you explain what you mean by 'charged in.'

A   He attacked me. He ran towards me, the few steps he was away. He headed headlong into me."

Thiesen recounted that as Defendant "was coming in," Thiesen hit Defendant on the side of his head with a metal flashlight Thiesen was carrying in his left hand. Asked what effect that had, Thiesen replied, "It didn't seem to have any effect, because he kept coming."

Thiesen and Defendant "went to the floor." Thiesen attempted to subdue Defendant, but failed. During the scuffle, Defendant, who was wearing leather work boots, kicked Thiesen in the face.

Thiesen eventually retreated to his patrol car. Defendant remained in the trailer until Sheriff Jerry Cox arrived. Cox told Defendant he was under arrest. Defendant submitted without resistance.

Asked to describe his injuries, Thiesen replied: "I had a bloody nose from where I was kicked in the face, and I had a few marks on my face, cheek. . . . And I had some bruises on my leg. I had strained muscles in my neck." Thiesen obtained treatment for the injuries at a hospital.

■    Instruction A, tendered by Defendant and rejected by the trial court, reads:

"On the issue of self-defense in this case, you are instructed as follows:

If the defendant reasonably believed he was in imminent danger of harm from the acts of Henry Theisen and the defendant only used such force as reasonably appeared to be necessary to defend himself, then he acted in lawful self-defense.

The state has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. Unless you find beyond a reasonable doubt that defendant did not act in lawful self-defense, you must find the defendant not guilty."

A notation at the foot of the instruction states: "MAI–CR 3RD 306.06."

Defendant maintains that inasmuch as the evidence established he was shoved backward by Thiesen and struck by Thiesen's flashlight before he (Defendant) touched Thiesen, Defendant could have reasonably believed he was in imminent danger of harm from Thiesen. Consequently, argues Defendant, it should have been left to the jury to decide whether he was justified in what he did. Without Instruction A, says Defendant, the jury had no choice but to find him guilty.

The version of MAI–CR 3d 306.06 in force when Defendant was tried is the version dated "10–1–92." [2] It has three parts, designated "PART A," "PART B," and "PART C," respectively.

Paragraph 3 of the "Notes on Use" under MAI–CR 3d 306.06 (10–1–92) states:

"This instruction is divided into three parts.

The first part of the instruction, part A, sets out the general requirements for the lawful use of force in self-defense. Those portions that are relevant to the case will be used. . . .

(a) Subject to some exceptions, the use of force in self-defense is not justified if

2.  That version has now been superseded by a version dated "10–1–95."

the defendant was the 'initial aggressor.' If there is no evidence indicating the defendant was the initial aggressor or provoked the incident, then the material in [1] of part A will not be used. If there is evidence the defendant was the initial aggressor, then the material in [1] of part A will be used.... The paragraph in parentheses in the material in [1] of part A will be used if there is further evidence that the defendant withdrew from the encounter...."

Part A of MAI–CR 3d 306.06 (10–1–92), referred to in the above Notes on Use, reads:

"One of the issues ... (in this case) is whether the use of force by the defendant against [*name of victim*] was in self-defense. In this state, the use of force ... to protect oneself from harm is lawful in certain situations.

[*Use the material in [1] ONLY if there is evidence defendant was the 'initial aggressor.' Omit brackets and number.*]

■ A person can lawfully use force to protect himself against an unlawful attack. However, an initial aggressor, that is, one who first (attacks) (or) (threatens to attack) another, is not justified in using force to protect himself from the counterattack which he provoked.

(A person who is the initial aggressor in an encounter can regain the privilege of using force in lawful self-defense if he withdraws from the original encounter and clearly indicates to the other person his desire to end the encounter. Then, if the other person persists in continuing the incident by threatening to use or by using force, the first person is no longer the initial aggressor, and he can then lawfully use force to protect himself.)...."

In the instant case, the uncontradicted evidence was that Defendant became angry and approached Thiesen, threatening to beat Thiesen unless he departed. When Defendant was nearly at Thiesen's face, Thiesen shoved Defendant backward. Defendant then "charged" Thiesen, whereupon Thiesen struck Defendant with the flashlight.

This uncontradicted evidence clearly raises an issue as to whether Defendant was the initial aggressor within the meaning of that term in paragraph "[1]" of part A of MAI–

CR 3d 306.06 (10–1–92), quoted above. Yet, contrary to paragraph 3(a) of the Notes on Use (quoted earlier), Instruction A tendered by Defendant did not contain the material in paragraph "[1]" of part A of MAI–CR 3d 306.06 (10–1–92), above, setting forth the law on self-defense when there is evidence that the person asserting the defense was the initial aggressor. Therefore, Instruction A did not comply with paragraph 3(a) of the Notes on Use.

Paragraph 3(b) of the Notes on Use under MAI–CR 3d 306.06 (10–1–92) states:

"The material in [2] of part A will be used in all cases."

Paragraph "[2]" of part A of MAI–CR 3d 306.06 (10–1–92), referred to in paragraph 3(b) of the Notes on Use, above, reads:

"In order for a person lawfully to use force in self-defense, he must reasonably believe he is in imminent danger of harm from the other person. He need not be in actual danger but he must have a reasonable belief that he is in such danger.

If he has such a belief, he is then permitted to use that amount of force which he reasonably believes to be necessary to protect himself."

Contrary to paragraph 3(b) of the Notes on Use, Instruction A tendered by Defendant did not contain the material in paragraph "[2]" of part A of MAI–CR 3d 306.06 (10–1–92), set forth above. Therefore, Instruction A did not comply with paragraph 3(b) of the Notes on Use.

Paragraph 3(d) of the Notes on Use under MAI–CR 3d 306.06 (10–1–92) states:

"The material in [4] of part A will be used in all cases."

Paragraph "[4]" of part A of MAI–CR 3d 306.06 (10–1–92), referred to in paragraph 3(d) of the Notes on Use, above, reads:

"As used in this instruction, the term 'reasonable belief' means a belief based on reasonable grounds, that is, grounds which could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false."

Contrary to paragraph 3(d) of the Notes on Use, Instruction A tendered by Defendant

did not contain the material in paragraph "[4]" of part A of MAI–CR 3d 306.06 (10–1–92), set forth above. Therefore, Instruction A did not comply with paragraph 3(d) of the Notes on Use.

The record thus demonstrates that Instruction A tendered by Defendant violated paragraphs 3(a), 3(b), and 3(d) of the Notes on Use under MAI–CR 3d 306.06 (10–1–92). Those were major violations in that, as explained earlier, the evidence raised an issue as to whether Defendant was the initial aggressor within the meaning of that term in paragraph "[1]" of part A of MAI–CR 3d 306.06 (10–1–92). Because of those violations, Instruction A would not have informed the jury of the law applicable to that issue. *See: State v. Kennedy,* 894 S.W.2d 723, 727–28 (Mo.App. S.D.1995).

■ We therefore hold Instruction A was an erroneous instruction under the evidence in this case. A trial court's refusal to give an erroneous self-defense instruction is not error. *Kennedy,* 894 S.W.2d at 728[6], citing *State v. Parkhurst,* 845 S.W.2d 31, 37 (Mo. banc 1992). Accordingly, Defendant's point relied on is denied.

■ Whether the trial court, upon rejecting Instruction A, erred in failing to give a correct instruction on self-defense *sua sponte* is not before us in this appeal, as Defendant's point relied on does not charge the trial court with error in that regard. A reviewing court is obliged to determine only those questions stated in the points relied on. *State v. Williams,* 887 S.W.2d 769, 770–71[4] (Mo. App. S.D.1994); *State v. Gooch,* 831 S.W.2d 277[2] (Mo.App. S.D.1992).[3]

Judgment affirmed.

PREWITT, P.J., and SHRUM, C.J., concur.

---

3. Whether a trial court has a duty *sua sponte* to give a correct instruction on an issue when the court properly rejects an erroneous instruction tendered by the accused on that issue is discussed in *State v. Garrette,* 699 S.W.2d 468, 510[64–66] and [67] (Mo.App. S.D.1985). In *Garrette,* as here, the accused's point relied on did not charge the trial court with error in failing to give a correct instruction *sua sponte.* This court held the question was not presented for review. *Id.*