Jibril Bin–Amir WALTON,
Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. 27975.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 20, 2007.

Mark Allen Grothoff, Columbia, MO, for movant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Robert Jefferson Bartholomew, Jr., Asst. Atty. Gen., Jefferson City, MO, for respondent-respondent.

JEFFREY W. BATES, Chief Judge.

Following a jury trial, Jibril Walton (Movant) was convicted of one count of the class C felony of involuntary manslaughter in the first degree and one count of the unclassified felony of armed criminal action. *See* §§ 565.024, 571.015.[1] He was sentenced to serve concurrent terms of 15 years in prison and life in prison, respectively, for committing these offenses. His convictions were affirmed on direct appeal to this Court in *State v. Walton*, 166 S.W.3d 95 (Mo.App.2005).

Thereafter, Movant filed a timely motion for post-conviction relief pursuant to Rule 29.15. After appointment of counsel, an amended motion was filed. The amended motion was denied without an evidentiary hearing. *See* Rule 29.15(j).[2] In Movant's sole point on appeal, he contends trial counsel was ineffective in failing to request additional initial aggressor language in the jury instruction relating to self-defense and in failing to offer an alternative instruction including such language. This Court affirms.

On appeal, our review of the denial of a Rule 29.15 motion is limited to determining whether the findings and conclusions of the trial court are clearly erroneous. Rule 29.15(k). The trial court's findings and conclusions are clearly erroneous "only if, after a review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made." *State v. Ervin*, 835 S.W.2d 905, 928 (Mo. banc 1992).

The evidence adduced at trial showed that, between March of 2002 and August of 2002, Movant had several contentious verbal and physical altercations with a group of men that included Dennis Williams, Jimmy Walker, Billy Jones (Jones), and Dartanyus Harris (Harris). On August 18, 2002, Movant was driving around in search of the aforementioned men when he encountered Jones and Harris. They were in Jones' vehicle, which was parked at the National Guard Armory in Cape Girardeau, Missouri. Neither Jones nor Harris had a gun. The parties exchanged words from inside their vehicles, and Harris then asked Movant if he had been following them. Movant responded, "There ain't nobody following you all." Harris leaned back in his seat, and Jones leaned up to say something to Movant when he started shooting. After firing "five or six" shots at Jones' vehicle, Movant drove off. Jones suffered three gunshot wounds and was rushed to the hospital by Harris. While at the hospital, Jones identified Movant as the shooter. Jones died twelve hours later, following surgery to repair the damage caused by the gunshot wounds. Movant was arrested the following afternoon. After being arrested, Movant told a police officer that he shot Jones because Movant thought Jones and Harris were going to shoot him. During the trial, Movant testi-

---

1. All references to statutes are to RSMo (2000). All references to rules are to Missouri Court Rules (2007).

2. Movant does not challenge the fact that his motion was denied without an evidentiary hearing.

fied that, when Harris moved back in his seat, Movant believed Harris was retrieving a gun from the floorboard. Movant felt that he "was going to die and [he] had to shoot and that was the only way [he] was going to get away from there alive. . . ."

Prior to the close of all of the evidence, the court held a preliminary jury instruction conference. The State tendered Instruction No. 5, which was patterned after MAI–CR 3d 306.06, to submit the issue of self-defense to the jury.[3] This proposed instruction included the following language:

> One of the issues in this case is whether the use of force by [Movant] against [Jones] was in self-defense. In this state the use of force including the use of deadly force to protect oneself from harm is lawful in certain situations.
>
> *A person can lawfully use force to protect himself against an unlawful attack. However, an initial aggressor, that is, one who first attacks another, is not justified in using force to protect himself from the counter-attack that he provoked.*
>
> . . . .
>
> On the issue of self-defense in this case, you are instructed as follows:
>
> *If [Movant] was not the initial aggressor in the encounter with [Jones] and/or [Harris],* and if [Movant] reasonably believed that he was in imminent danger of death or serious physical injury from the acts of [Jones] and/or [Harris] and he reasonably believed that the use of deadly force was necessary to defend himself, then he acted in lawful self-defense.

(Italics added.) The State added the italicized language to this instruction because there was evidence that Movant "pulled up and pulled the gun and started shooting so that is why he is not entitled to acquittal by self-defense. . . ." The inclusion of this language complied with the directive in MAI–CR 3d 306.06 that it is only to be used if there is evidence that the defendant was the initial aggressor.[4] Movant's trial counsel objected to the inclusion of the language on the ground that there was no evidence Movant was the initial aggressor. The trial court ruled that the challenged language had to be included in the instruction "because there is evidence in the record . . . that [Movant] was the initial aggressor."

At the close of all of the evidence, a formal jury instruction conference was held. The State proffered Instruction No. 5 with the aforementioned initial aggressor language. Defense counsel objected to the inclusion of such language for the reason previously noted and submitted an alternative self-defense instruction omitting such language. The trial court overruled the objection, rejected defense counsel's tendered alternative instruction and gave Instruction No. 5 with the initial aggressor language included.

As stated above, the jury convicted Movant of involuntary manslaughter and armed criminal action. On direct appeal, Movant argued that Instruction No. 5 should not have been given in the form tendered by the State because there was insufficient evidence that Movant was the initial aggressor. This Court held that Instruction No. 5 was properly given because there was evidence from which the jury could have found that "[Movant] was

---

3.  All references to MAI–CR 3d 306.06 are to the 9–1–02 revision. That revision has since been superseded by another revision dated 1–1–07.

4.  *See* Notes on Use 4(a), MAI–CR 3d 306.06.

the aggressor in the incident that led to victim's death." *State v. Walton,* 166 S.W.3d 95, 100 (Mo.App.2005).

In due course, Movant filed a *pro se* Rule 29.15 motion. Appointed counsel filed an amended motion which alleged, *inter alia,* that Movant's trial counsel was ineffective for failing to: (1) object to Instruction No. 5 because it omitted the parenthetical phrase "or threatens to attack" from the initial aggressor language; and (2) offer an alternative self-defense instruction which included this additional language.[5] Movant argues that the inclusion of this language was supported by evidence that Harris threatened to attack Movant by reaching for a gun. The trial court denied relief because the evidence did not support Movant's proposed modification of Instruction No. 5.

Movant bears the burden of proving, by a preponderance of the evidence, that he received ineffective assistance of counsel. Rule 29.15(i). To establish ineffective assistance of counsel, Movant must show that: (1) counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney; and (2) counsel's poor performance prejudiced the defense. *State v. Hall,* 982 S.W.2d 675, 680 (Mo. banc 1998); *see Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Movant must prove each portion of this two-pronged performance and prejudice test in order to prevail on his ineffective assistance of counsel claim. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987). To satisfy the first prong, a movant must demonstrate that "counsel's representation

fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. A movant can do this by pinpointing specific acts or omissions of counsel that resulted from unreasonable professional judgment, but the reviewing court must find these acts to be "outside the wide range of professionally competent assistance" for Movant to be successful. *Id.* at 690, 104 S.Ct. 2052. Movant bears the heavy burden of overcoming the trial court's presumption that trial counsel's conduct was reasonable and effective. *Clayton v. State,* 63 S.W.3d 201, 206 (Mo. banc 2001). The second prong of the *Strickland* test is met when a movant shows that his attorney's errors affected the judgment. *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. A movant can prove that the judgment was affected when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

At trial, Movant claimed that he shot Jones in self-defense. That defense, however, was not available to Movant if he was the initial aggressor in the incident. *State v. Huff,* 831 S.W.2d 752, 754 (Mo.App. 1992); § 563.031.1(1).[6] MAI–CR 3d 306.06, which is used to submit the issue of self-defense to the jury, includes various provisions relating to the initial aggressor limitation on this defense. This pattern instruction is divided into parts A, B and C. *Id.* Insofar as relevant, part A states:

---

**5.** MAI–CR 3d 306.06, part A[1], prescribes the approved pattern language for the initial aggressor paragraph as follows: "However, an initial aggressor, that is, one who first (attacks) (or) (threatens to attack) another, is not justified in using force to protect himself from the counter-attack that he provoked."

**6.** Subparts (a)-(c) of § 563.031.1(1) provide exceptions to the initial aggressor rule, none of which are relevant here.

One of the issues (as to Count _____) (in this case) is whether the use of force by the defendant against [*name of victim* ] was in self-defense. In this state, the use of force (including the use of deadly force) to protect oneself from harm is lawful in certain situations.

[*Use the material in [1] ONLY if there is evidence the defendant was the "initial aggressor." Omit brackets and number.*]

[1] A person can lawfully use force to protect himself against an unlawful attack. However, an initial aggressor, that is, one who first (attacks) (or) (threatens to attack) another, is not justified in using force to protect himself from the counter-attack that he provoked.

The general instructions in part A make it plain that the selection of the proper phraseology (i.e., "attacks," "threatens to attack," or a combination of the two) is controlled by the evidence concerning the defendant's conduct preceding the use of force against the victim. That conclusion is reinforced by Notes on Use 4(a), which states:

Subject to some exceptions, the use of force in self-defense is not justified if the defendant was the "initial aggressor." If there is no evidence indicating the defendant was the initial aggressor or provoked the incident, then the material in part [1] of part A will not be used. If there is evidence the defendant was the initial aggressor, then the material in [1] of part A will be used....

Thus, the purpose of the language drawn from part A[1] is to advise the jury how to determine whether a defendant's actions have made him the initial aggressor in an incident, which would preclude self-defense being used as a justification for the defendant's use of force. *State v. Colson*, 926 S.W.2d 879, 881–83 (Mo.App.1996); *State v. Kennedy*, 894 S.W.2d 723, 727 (Mo.App. 1995); *State v. Allison*, 845 S.W.2d 642, 646–47 (Mo.App.1992). Contrary to Movant's argument, the conduct of the victim or a third party has no bearing on what language from part A[1] is used to submit the issue of whether a defendant was the initial aggressor. Paragraphs [1], [4] and [5] in part C are used to identify the conduct of others that is relevant to this issue. MAI–CR 3d 306.06, part C.

"It is axiomatic that instructions must be supported by substantial evidence and the reasonable inferences to be drawn therefrom." *Coday v. State*, 179 S.W.3d 343, 354 (Mo.App.2005). Movant testified at trial that he sought out Jones and Harris on the day in question so that he could "talk to them and [he] was going to take precautions and [he] had [his] gun on [him]...." Neither Harris nor Movant testified about any verbal threats made by Movant just prior to the shooting; both agreed that the only thing discussed was whether Movant had been following Harris and Jones that day. According to Harris, he spoke to Movant, sat back into his seat, and Movant "started shooting" as Jones leaned forward. Likewise, Movant testified he was speaking to Harris when he made a motion as if he were reaching into the floorboard for a gun. Movant "fired when [Harris] was coming up." As Movant did not threaten to attack Jones or Harris prior to firing upon them, there was no evidence to support the modification of Instruction No. 5 by including the "threatens to attack" language from part A[1] of MAI–CR 3d 306.06. Counsel is not ineffective for failing to request an instruction that lacks evidentiary support. *See Coday*, 179 S.W.3d at 354–55; *Wright v. State*, 125 S.W.3d 861, 868–69 (Mo.App. 2003).

After a thorough review of the record, we do not have a definite and firm impression that the motion court erred in denying Movant's request for post-conviction relief. The motion court's findings of fact and conclusions of law are not clearly erroneous. *State v. Ervin,* 835 S.W.2d 905, 928 (Mo. banc 1992); *see* Rule 29.15(k). Point denied.

The motion court's order denying Movant's amended Rule 29.15 motion is affirmed.

BARNEY and LYNCH, JJ., Concur.