STATE of Missouri, Plaintiff–
Respondent,

v.

Ramona A. MILLER, Defendant–
Appellant.

No. 26164.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 10, 2005.

Motion for Rehearing or Transfer
Denied Aug. 30, 2005.

Application for Transfer Denied
Nov. 1, 2005.

C. John Pleban, Lynette M. Petruska, Pleban and Associates, L.L.C., St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Theodore A. Bruce, Assistant Attorney General, Jefferson City, MO, for respondent.

PHILLIP R. GARRISON, Presiding Judge.

Ramona A. Miller ("Appellant") appeals from her conviction of the class A misdemeanor of resisting arrest, pursuant to Section 575.150 RSMo (Cum.Supp.2002).[1] We affirm.

In addition to resisting arrest, Appellant was charged with failing to drive on the right half of the roadway, failing to yield to an emergency vehicle, and exceeding the posted speed limit. She was tried by a jury and found not guilty of all charges except resisting arrest. The jury recommended a sentence of six months confinement and a fine to be determined by the court. The court sentenced Appellant to six months in the Laclede County Jail and assessed a fine of $500. Appellant filed a motion for new trial, which was denied. This appeal followed.

## I. Facts

The versions of the facts presented by the State's evidence and that of Appellant differed significantly. Those differences will be apparent from the following description of the testimony.[2]

In the early morning hours of August 28, 2002, Appellant, driving a blue pickup truck, was returning to her home in Versailles, Missouri from her work as a physician in Springfield, Missouri. Deputy Sheriff Chris Moehle ("Moehle") was working as a patrol officer that night and noticed a blue pickup truck traveling north on Highway 5 in Camden County. He testified that he paced the truck at seventy miles per hour in a fifty mile per hour

zone. Moehle followed the truck for a distance of approximately ten miles, during which time he stated that it crossed the center line and the fog line,[3] but he later stated that the vehicle only broke the plane of these lines. He eventually turned on his emergency lights and the truck pulled into a well-lit bank parking lot in Sunrise Beach, Missouri. Instead of coming to a stop, however, the pickup pulled back onto the highway and continued north for a short distance before finally stopping near the intersection with Lake Road 5–35.

Appellant testified to a different version of events than that given by the officers. She said that she was driving on Highway 5 in Camden County when she passed emergency vehicles, with lights flashing, sitting in a parking lot. A Camden County Sheriff's Department vehicle was also parked perpendicular to the road, with its bright headlights shining onto the road. After passing this scene, she saw nothing following her, but shortly noticed that a vehicle had come up quickly behind her, with its bright headlights on, and was following very closely to her bumper. She testified that she was not speeding when the vehicle appeared to her rear, and that there was no way that she could drive seventy miles per hour through the area where the officer claimed she did because of road construction and curves. After the vehicle had followed her for some distance, Appellant slowed her speed to twenty-five miles per hour. Finally, after the vehicle had followed her for ten miles, repeatedly backing off of her bumper and coming close, she saw flashing lights on its roof

1. Section 575.150 was amended by HB 1270 and HB 2032 in 2002 to the current language. All other statutory references are to RSMo (2000) unless otherwise indicated.

2. Because there are issues on this appeal in addition to the sufficiency of the evidence, our

review of the facts is more comprehensive than would ordinarily be the case.

3. The white line on the right-hand side of the highway.

and she immediately pulled over. According to her, she did not pull over, stop, and then drive off again as the officer alleged. Once stopped, she made a call on her cellular phone to a friend at her home, claiming that she was concerned for her safety, and had her friend tape record the conversation.

According to Moehle, he approached the vehicle and attempted to speak with Appellant, who was speaking on a cellular telephone. He identified himself as a police officer, produced his commission card, and informed Appellant that she could verify his identification by contacting the Camden County Sheriff's Department. He testified that he requested that she roll down her window and produce her driver's license, but Appellant refused to do so. Though he testified that communication was difficult, he said that he informed her that he pulled her over for speeding as well as crossing the fog and center lines of the highway. After several attempts to get her to roll down her window, Moehle called his supervisor, Corporal Bart Sims ("Sims"), for assistance. Another law enforcement officer, Michael Shane Edwards ("Edwards") of the Laurie Police Department, heard Moehle's request for a supervisor on the radio and came to the scene in case assistance was needed. When Sims arrived, he approached Appellant's vehicle, and asked her to roll down the window and produce her driver's license. Initially, rather than rolling the window down, Appellant placed her license against the glass for the officer to see. Sims also testified that when he told Appellant that he needed her to hand him the license, she lowered the window a few inches, partially extended her license out the window, but yanked it back when he reached for it. After Appellant refused several requests to get out of the vehicle, Sims told her that if she did not do so she would be arrested for the traffic violations. Appellant again

refused to get out, and Sims told her that she was under arrest and asked Moehle to get an unlocking tool out of his vehicle and use it to open the passenger side door of Appellant's pickup.

Appellant's testimony was that because of the darkness she could not immediately tell that the person who came up to her window when she stopped was a law enforcement officer. She said that the officer shined a flashlight in her eyes and asked her to roll down the window further, even though she had already partially lowered it. According to her, she asked the officer who he was and he said, "Dr. Miller, roll your window down all the way," and that he never asked for her driver's license. When she asked a second time for him to identify himself and what he wanted, he showed her his identification and she learned that it was Moehle. According to Appellant, Moehle told her to get off the cell phone and told her he was going to call for backup before leaving her window. Ten minutes later, Sims came to the window, "slapped his ID on the driver's window," and told her to "[c]all the Sheriff. He's expecting you." Sims also asked for her ID which she displayed, still in her wallet, against the driver's window of the truck. When Sims told her several times to "[t]ake it out," she did so and passed it through the partially open window. Appellant said that when she did that, Sims grabbed her hand instead of the license and "yanked it back as hard as he could." At this point, she asked her friend, who was still on the phone to call someone to "[c]all—[c]all someone. Do something." Sims then told Appellant that she was under arrest, to which she replied, "Oh, I'm under arrest?" and he responded, "Now you're resisting arrest." It was at that point that Sims told Moehle to go to the other side of the car with a "Slim Jim."

Moehle said that he attempted to use the unlocking tool to get in, but Appellant prevented him by grabbing it. Sims then warned Appellant that he was going to break the driver's side window with his flashlight, and gave her another opportunity to get out of the truck before doing so. After he broke it, Sims unlocked the door, opened it, told Appellant again that she was under arrest, and asked her to step out of the vehicle. Appellant once again refused and grabbed the steering wheel with both hands. Sims informed Appellant several times that she was resisting arrest, and then forcibly removed her from the vehicle, which Appellant resisted by continuing to hold onto the steering wheel and trying to pull herself back into the truck. After removing her, Sims and Moehle placed her on the ground and handcuffed her. They then stood her up, but placed her on the ground again when Moehle saw something, which turned out to be her wallet, in her hands. The officers then transported Appellant to the Camden County Jail.

Appellant said that after Sims told her that she was resisting arrest, he told Moehle to open her passenger door using a Slim Jim, but she denied grabbing it. She said that Sims told her that he was going to break into her truck, and after he broke the window, he asked her to get out of the vehicle. According to her, she said, several times, "Just a minute," because she had her cellular phone in one hand and her wallet in the other and was trying to remove her seat belt. She said, however, that Sims opened the door, grabbed her by the arm causing her seat belt to cut into her, and kicked her in the leg, causing her to fall sideways out of the truck. Appellant denied holding onto the steering wheel to prevent her removal from the truck. She also presented evidence about injuries she received from her encounter with the officers, consisting mainly of bruising, abrasions, and cuts. With regard to her actions that night, Appellant denied that she sped, failed to drive on the right-hand side of the roadway, failed to yield to an emergency vehicle, or resisted arrest.

## II. Discussion

### A. Constitutional Issue

■ In Appellant's first of nine points on appeal, she contends that "[t]he trial court erred in overruling [her] motion for a new trial in failing [sic] to declare Section 575.150 R.S.Mo. unconstitutional in that Section 575.150 (resisting arrest) upon which [she] was convicted is unconstitutional both on its face and as applied to [her]. . . ." She proceeds to argue that Section 575.150 is unconstitutionally vague, overbroad and allows law enforcement officers to engage in unlawful and false arrests as well as other criminal conduct. Since Appellant challenges the constitutionality of the statute under which she was convicted, it is necessary that we consider our jurisdiction.

■ The Supreme Court of Missouri has exclusive jurisdiction over the constitutional validity of a state statute. Mo. CONST. art. V, § 3. No issue is raised in this case concerning our jurisdiction to determine this point. Notwithstanding that fact, it is our responsibility to determine our jurisdiction, *sua sponte*. *Estate of McCluney*, 871 S.W.2d 657, 659 (Mo. App. W.D.1994). "If the constitutional validity of [the statute] has been preserved for appeal, then we have no jurisdiction of the appeal." *Id.* However, "[t]he mere assertion that a statute is unconstitutional . . . does not deprive the court of appeals of jurisdiction unless the constitutional issue is real and substantial, and not merely colorable." *State v. Roedel*, 884 S.W.2d 106, 108 (Mo.App. E.D.1994).

■ In this case, we are unable to find in the record any indication that an issue of the constitutionality of Section 575.150 was raised prior to Appellant's motion for new trial. Missouri has always adhered to the rule that to preserve a constitutional issue for appellate review, it must be raised at the earliest time consistent with good pleading and orderly procedure. *State v. Flynn*, 519 S.W.2d 10, 12 (Mo. 1975). In *Flynn*, the defendant on appeal contended that the statute under which he was convicted was unconstitutionally vague and overbroad when applied to him. *Id.* The court said "[t]he earliest possible moment consistent with good pleading and orderly procedure in which a party may raise a constitutional issue pertaining to the information or indictment is in a motion to dismiss or to quash pursuant to Rules 25.05 and 25.06, V.A.M.R." *Id.* "The constitutional issue cannot be preserved for appellate review by mentioning it for the first time in a motion for new trial." *Id.*

In *State v. Belcher*, 805 S.W.2d 245, 251 (Mo.App. S.D.1991), the defendant contended that the statute proscribing armed criminal action was unconstitutionally vague, but the issue was not presented to the trial court until his motion for new trial. This court held "[i]nasmuch as no constitutional challenge to the statute on the basis of vagueness was made prior to the motion for new trial, the constitutional issue has not been preserved for review." *Id.* "Because this issue has not been preserved for review, we can neither consider the issue nor transfer the appeal to the Supreme Court." *Id.*

Likewise, we are unable to consider Appellant's constitutional challenge to Section 575.150 in this appeal. The first point is denied.

## B. Sufficiency of the Evidence

■ In her second point, Appellant contends that the trial court erred in overruling her motions for judgment of acquittal at the close of the State's evidence and at the close of all the evidence because there was insufficient evidence to establish that Appellant committed the crime of resisting arrest. She claims that the charge, which was limited by the State's bill of particulars, was based on nothing more than conjecture and speculation rather than relevant and probative evidence that established her guilt beyond a reasonable doubt.

■ Appellate review of the sufficiency of the evidence to support a conviction "is limited to a determination of whether there is sufficient evidence from which a reasonable jury might have found the defendant guilty beyond a reasonable doubt." *State v. Keightley*, 147 S.W.3d 179, 182 (Mo.App. S.D.2004). In applying that standard, we are to "accept as true all evidence favorable to the State, including all favorable inferences drawn therefrom, and disregard all evidence and inferences to the contrary." *Id.*

Section 575.150, pursuant to which Appellant was charged and convicted, provides, in pertinent part:

1. A person commits the crime of resisting or interfering with arrest, detention, or stop if, knowing that a law enforcement officer is making an arrest, or attempting to lawfully detain or stop an individual or vehicle, or the person reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or lawfully stop an individual or vehicle, for the purpose of preventing the officer from effecting the arrest, stop or detention, the person:

(1) Resists the arrest, stop or detention of such person by using or threaten-

ing the use of violence or physical force or by fleeing from such officer[.]

2. This section applies to arrests, stops or detentions with or without warrants and to arrests, stops or detentions for any crime, infraction or ordinance violation.

. . . .

4. It is no defense to a prosecution pursuant to subsection 1 of this section that the law enforcement officer was acting unlawfully in making the arrest. However, nothing in this section shall be construed to bar civil suits for unlawful arrest.

Appellant was charged with resisting arrest by "knowing that the officers were making an arrest and for the purpose of preventing the officers from effecting the arrest, resisted the arrest of defendant by using or threatening the use of violence, physical force or physical interference." She subsequently filed a motion for bill of particulars pursuant to Rule 23.04[4] seeking particular information relating to that charge. In response, the State filed a bill of particulars stating:

1. The charge in Count I of resisting arrest results from [Appellant] refusing to exit her vehicle on August 28, 2002, after being informed by [Moehle] and [Sims], law enforcement officers, that [Appellant] was to exit the vehicle and that she, further, resisted by grasping the steering wheel when the officers attempted to remove her from her vehicle, all occurring in Camden County, Missouri.

Appellant cites *State v. Moseley*, 735 S.W.2d 46, 48 n. 1 (Mo.App. W.D.1987), for the proposition that a bill of particulars binds and restricts the State as to the scope of the information and to the proof offered in support of it. Accordingly, she argues that the State was limited, in its proof of resisting arrest, to showing that she refused to exit the vehicle when ordered to do so by law enforcement officers, and that she resisted by grasping the steering wheel when the officers attempted to remove her.

Moehle testified that when they opened the driver's door and attempted to remove Appellant, she was "gripping the steering wheel, kind of hugging the steering wheel," and they "used the force necessary to get her out of the vehicle." Sims testified that when they opened Appellant's door and told her to get out, she refused and grabbed the steering wheel with both hands; he grabbed her left arm and tried to pull her out of the vehicle; "she continued to struggle, she'd hold onto the steering wheel"; that when he "finally got her left hand free, she began pawing at the seat area with her right hand as [he] was pulling her from the vehicle." Edwards testified that as the officers were attempting to remove Appellant from the vehicle, she was "pulling back" by holding onto the steering wheel.

Appellant contends that evidence of grasping the steering wheel as the officers removed her from the vehicle was not enough to convict her of resisting arrest. In support, she points to a number of Missouri cases in which she says "the use [of] physical force" to support a resisting arrest conviction was force directed against the officer. Those cases include *City of Montgomery v. Christian*, 144 S.W.3d 338 (Mo.App. E.D.2004); *State v. Shipp*, 125 S.W.3d 358 (Mo.App. S.D.2004); *State v. Bickings*, 910 S.W.2d 370 (Mo. App. S.D.1995); *State v. Reynolds*, 723

4. All rule references are to Missouri Rules of Criminal Procedure (2003) unless otherwise indicated.

S.W.2d 400 (Mo.App. W.D.1986); *State v. Feagan*, 835 S.W.2d 448 (Mo.App. S.D. 1992); *State v. Bedford*, 689 S.W.2d 731 (Mo.App. E.D.1985).

Appellant acknowledges that *State v. Belton*, 108 S.W.3d 171 (Mo.App. W.D. 2003), is contrary to her theory in this regard, but she argues that it was wrongly decided and that we should not follow it. In *Belton*, the defendant was a passenger in a vehicle that was stopped by a highway patrolman for traffic violations when the officer saw the defendant throw several plastic bags from the window. *Id.* at 172–73. The officer told defendant that he was under arrest for littering and ordered him to get out of the car. *Id.* at 173. Defendant initially complied, but later got back into the car and refused the officer's order to get back out. *Id.* As the officer was unsuccessfully attempting to remove defendant from the car, the driver of the vehicle drove off knocking the officer into a ditch. *Id.* There, as in the instant case, the defendant did not threaten the officer and the only force that he used was to exert sufficient resistance to keep the officer from pulling him from the car. *Id.* at 174. As described by the court, the defendant "stiffened his body as [the officer] tried to pull him from the car." *Id.*

In *Belton*, the defendant was convicted of resisting arrest. On appeal, the western district of this court noted that the legislature did not define "physical force." *Id.* at 175. After reviewing dictionary definitions of force, the court determined that the legislature, by referring to "violence" and "physical force" separately in Section 575.150, intended to include nonviolent force. *Id.* In affirming the conviction, the court said:

> The state presented evidence that [defendant] exerted physical force. [The officer] testified that he tried to pull [defendant] from the car and could not.

The jury could have reasonably concluded that [defendant] used physical force in resisting [the officer's] arrest by exerting the strength and power of his bodily muscles to overcome [the officer's] attempts to pull him from the car. Because of [defendant's] use of forceful constraint against [the officer's] force, [the officer] could not remove him from the car before [the driver's] swift departure. This was sufficient evidence from which the jury could have concluded reasonably that [defendant] was guilty of violating § 575.150.1.

Contrary to Appellant's argument, we do not see the *Belton* case as expanding the definition of "physical force" to include virtually any action or inaction that subjectively offends an officer. Rather, we agree with the western district's interpretation of "physical force" necessary for a conviction under Section 575.150.1(1). Accordingly, contrary to Appellant's assertion, the evidence was sufficient here for a reasonable jury to conclude, beyond a reasonable doubt, that she resisted arrest by using physical force. Point two is denied.

## C. Refusal of Appellant's Instruction No. B

In her third point, Appellant claims that the trial court erred in refusing to submit her proposed Instruction No. B which would have instructed the jury that failing to produce a driver's license is not a crime. She contends that this error was prejudicial and was compounded by the opening and closing arguments which addressed the legality or illegality of failing to produce a driver's license. She claims that, as a result, the jury was confused about the applicable law of resisting arrest.

The instruction that was proposed by Appellant, refused by the trial court, and which forms the basis of this point was

Instruction No. B: "Failure to produce one's driver's license upon demand of a police officer is not a crime in Missouri, although such failure is presumptive evidence that one is not duly licensed."

In support of this point, Appellant refers us to statements made in opening statements and closing argument. First, she argues that the State misstated the law when it told the jury in opening statement that a citizen has the obligation to roll down her window and produce a driver's license. The portion of the record cited by Appellant in support contains the following statement: "[a]nd there will be no dispute that a citizen who is pulled over doesn't have the obligation upon request of an officer to roll down her window to produce a driver's license." An objection by Appellant's counsel to that statement as a mischaracterization of the law was sustained and the comment stricken. Appellant argues, however, that confusion was created when the State successfully objected to the following statement made in Appellant's closing argument as a misstatement of the law: "[b]ut this has to be—You can't resist arrest, folks, by sitting there. You can't resist arrest. If a police officers [sic] says to you, 'Give me your driver's license'—" The State's objection at that point was sustained and the trial court admonished the jury to apply the law as contained in the jury instructions.

We note that the first comment by the State was stricken, and that the statement by Appellant's counsel to which an objection was sustained was, as it relates to the subject of the driver's license, incomplete at best and certainly not supportive of her premise in this point.[5] Appellant, however, highlights the following testimony received concerning her failure or refusal to surrender her driver's license when she was stopped: (1.) Moehle testified that Sims told her several times to roll the window down and asked for her ID, she eventually rolled it down two to three inches and slid her driver's license halfway out, but when Sims took hold of it, she jerked it back inside the vehicle. Sims told her that if she did not comply she would be under arrest. (2.) Sims testified that he asked to see Appellant's driver's license; she held her driver's license up against the closed window; he told her he needed for her to hand her license to him; when she placed the license through a crack in the window, he reached for it but she pulled it back; he told her he needed her license or she was going to be arrested for the reason of the traffic stop and that "if this continued on, she was going to be arrested for resisting arrest as well." She contends that as a result of this testimony and the trial court's action during closing argument, "the jury could only conclude that [she] was required to produce her driver's license and her failure to do so was a crime."

Appellant, however, argues that in Missouri it is not illegal or a crime to fail to produce a driver's license, citing *State v. Campbell,* 564 S.W.2d 867 (Mo. banc 1978). There, the court interpreted Section 302.181, RSMo Supp. (1973), which provided:

---

5. Appellant also argues that testimony given by Moehle and Sims about her refusal to give them her driver's license and Sims' statements that she would be under arrest for the reason of the traffic stops and for resisting arrest if she did not comply, are also supportive of this point. That testimony, however, was not referred to in the point relied on as

explaining why the legal reasons, in the context of the case, support the claim of reversible error as required by Rule 84.04(d)(1), made applicable to this criminal case by Rule 30.06(c). The only issues for resolution on appeal are those contained in the point relied on. *State v. York,* 931 S.W.2d 185, 189 (Mo. App. S.D.1996).

The license issued shall be carried at all times by the holder thereof while driving a motor vehicle, and shall be displayed upon demand of any officer of the highway patrol, or any police officer or peace officer, or any other duly authorized person, for inspection when demand is made therefor. Failure of any chauffeur or operator of a motor vehicle to exhibit his license to any duly authorized officer shall be presumptive evidence that such person is not a duly licensed chauffeur or motor vehicle operator.[6]

*Id.* at 868. The *Campbell* court concluded that it is not unlawful to fail to display a driver's license on demand of a police officer. *Id.* at 870. It also noted, however, that failure to produce a license upon lawful demand would give the officer probable cause to arrest a driver for a violation of Section 302.020, RSMo (1969). *Id.* at 869. That section provided, in pertinent part that "[i]t shall be unlawful for any person ... to: (2) Operate, other than as a chauffeur any motor vehicle, except farm tractor, upon any highway of this state unless he has a valid license as an operator under the provisions of this chapter[.]" *Id.* at 868.[7]

According to Appellant, because of the officers' testimony that failing to produce a driver's license or otherwise comply with their orders constituted a crime and/or resisting arrest, "the jury needed to understand that the officers' misunderstanding of the law was not the law in the State of Missouri." In this regard, she points to the following question submitted by the jury after its deliberations began: "By law if a[sic] officer request[s] you hand license to you [sic], do you have to? Is it procedure or law?"

■ The trial court, however, gave the following jury instruction on resisting arrest, patterned after MAI–CR 3d 329.60.2 ("Instruction No 6"):

As to Count One, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about August 28, 2002, in the County of Camden, State of Missouri, [Moehle] and [Sims] were law enforcement officers, and

Second, that [Moehle] and [Sims] were making an arrest of [Appellant] for failure to yield to emergency vehicle, failure to drive on the right half of the roadway and speeding, and

Third, that [Appellant] knew or reasonably should have known that one or more law enforcement officers were making an arrest of [Appellant], and

Fourth, that for the purpose of preventing the law enforcement officers from making the arrest, [Appellant] resisted by using violence or physical force,

then you will find [Appellant] guilty under Count One of resisting arrest.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [Appellant] not guilty of that offense.

What was submitted to the jury, and what they were required to find in order to

---

6. Section 302.181 has been amended, and this language is nearly identical to the current Section 302.181.4.

7. Section 302.020 has been amended and now reads, in pertinent part, "[i]t shall be unlawful for any person ... to: (1) operate any vehicle upon any highway in this state unless the person has a valid license[.]"

convict Appellant of this charge, was whether Appellant resisted arrest by "using violence or physical force," not whether she did so by refusing to hand her license to the officers. Jurors are presumed to follow the court's instructions. *State v. Lyons,* 951 S.W.2d 584, 598 (Mo. banc 1997); *State v. Futo,* 990 S.W.2d 7, 18 (Mo.App. E.D.1999).

 "Whenever there is an MAI–CR instruction ... applicable under the law and Notes on Use, the MAI–CR instruction ... shall be given or used to the exclusion of any other instruction[.]" Rule 28.02(c). The court must give the applicable MAI–CR instruction as written. *State v. Campbell,* 935 S.W.2d 394, 396 (Mo.App. W.D.1996). Refused Instruction No. B was in the nature of a cautionary instruction, the giving or refusal of which is discretionary with the trial court. *State v. Bibbs,* 461 S.W.2d 755, 760 (Mo.1970). Our review is for an abuse of discretion. *State v. Edwards,* 60 S.W.3d 602, 610 (Mo. App.W.D.2001). Given the fact that the jury was properly instructed on the necessary elements it must find in order to convict Appellant of resisting arrest, we find no abuse of discretion in refusing her tendered Instruction No. B. This point is denied.

### D. Refusal of Appellant's Instruction No. A

 In her fourth point, Appellant claims that the trial court erred by failing to give her proposed Instruction No. A, which would have instructed the jury on what constitutes an arrest under Missouri law. She claims that the failure resulted in a misapplication of the substantive law and prejudiced her by confusing the jury on the applicable law of resisting arrest.

Instruction No. A stated: "An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer, under authority of a warrant or otherwise. The officer must inform the defendant by what authority he acts, and must also show the warrant if required."

Appellant contends that whether she was arrested was not only an essential element of the crime with which she was charged, but was also a hotly contested issue. Her argument is summarized as follows: there was substantial evidence from which the jury could conclude that her traffic stop was pretextual and designed to harass her and, therefore, she "reasonably did not believe she was being arrested but simply harassed once again" [8]; there was ample evidence from which the jury could conclude that she was arrested for violating a law that does not exist (failure to obey a law enforcement officer's directions); and under these circumstances, the officers could not make an "arrest" under Missouri law because "this restraint was not made under authority or

---

8. Appellant claimed that she had been harassed because she had treated a prisoner in the Camden County Jail in May 2001, recommending that he be transported to Springfield, Missouri for medical treatment, but that she was refused access to him at a later date because she did not have photo identification. She later filed an affidavit in the prisoner's federal lawsuit against Camden County expressing concern over the quality of healthcare he received while incarcerated. She also testified about two other instances when she was followed by Camden County officers. In the first, she said that the officer would get close to the back of her car, back off, and then get close again. When he stopped her, she produced her driver's license and he released her without a ticket or warning. In the other, a patrol car again came close to the rear of her car, backed off, and then came up behind her again until a friend "popped up in the seat," at which time the patrol car stopped in the road and turned around.

probable cause." Accordingly, she theorizes that "arrest" is a technical term and if the jury had received a definition of that term, it would have found differently on the issue of resisting arrest.

Instruction No. 6, the resisting arrest instruction—set out completely above—was patterned after MAI–CR 3d 329.60.2. The Notes on Use provide for some terms, if used in that instruction, to be defined. "[A]rrest" is not one of them. Furthermore, MAI–CR 3d 333.00, the general form for definitions in jury instructions, states that "[a] definition of a term, word, or group of words shall not be given unless permitted by paragraphs A, B, C, D, or E above, even if requested by counsel or the jury." MAI–CR 3d 333.00, Notes on Use 2(F). Appellant does not contend that paragraphs A, B, C, D, or E are applicable here.

Appellant does contend, however, that "arrest" is a technical term that must be defined and cites *State v. George,* 717 S.W.2d 857, 860 (Mo.App. S.D.1986), which holds that technical terms which may be misapplied by the jury must be defined or explained to them, but when an instruction employs words of common usage, no definition is required. *Id.* She also cites *State v. Farris,* 125 S.W.3d 382, 391 (Mo.App. W.D.2004), for the proposition that a definition can be required even when it is not required by the pattern MAI instructions and their Notes on Use. There, the applicable MAI–CR for attempt to manufacture methamphetamine, and its Notes on Use, did not require a definition of "possession." *Id.* The evidence relied upon by the State to prove an element of the offense (the doing of an act which is a substantial step toward the commission of that offense), however, was constructive possession of materials used to manufacture methamphetamine. *Id.* at 392. The court found that without a definition of "possession"

requiring the jury to find knowledge and control of the items, the verdict director effectively omitted an essential element of the offense. *Id.* at 394.

In the instant case Appellant argues that "[e]ven if Appellant was prohibited from presenting evidence that the underlying arrest was unlawful, punitive and vindictive, this did not excuse the jury from finding beyond a reasonable doubt that an arrest as defined by Missouri law was being made before she could be convicted of resisting arrest." She also argues that "the officers could not make an 'arrest' as defined by Missouri law because this restraint was not made under authority or probable cause." It is clear from this argument and the proposed instruction defining arrest that Appellant sought to inject the validity of the arrest as an element of the offense of resisting arrest. Thus, the proposed definition would require that an arrest, for the purposes of resisting arrest, be "under authority of a warrant or otherwise."

■ Section 575.150.4 provides, in part, that "[i]t is no defense to a prosecution pursuant to subsection 1 of this section that the law enforcement officer was acting unlawfully in making the arrest." In *State v. Merritt,* 805 S.W.2d 337, 339 (Mo.App. E.D.1991), it was held that "[a] person does not enjoy the right to resist any arrest, even an unlawful one, by a known police officer.... Hence, it is no defense to the charge of resisting arrest that the officer was without probable cause to make the arrest, was acting in furtherance of a law found to be unconstitutional or that there existed no valid basis with which to arrest the purported violator." (citations omitted). As explained in *State v. Briggs,* 435 S.W.2d 361, 365 (Mo.1968), "[t]o permit persons to resist arrest and attack an officer and then be excused if they successfully question the constitution-

ality or validity of a statute or ordinance would lead to chaos and would be intolerable." The same principle would apply if a person were permitted to resist arrest on a question of the validity of the arrest itself.

There can be no question here that Appellant knew that the officers were arresting her. Under the authorities cited above, the validity of that arrest does not determine whether she was entitled to resist that exercise of authority. Unlike *Farris*, the meaning or validity of the arrest was not an element of the offense of resisting arrest. It was not error to refuse this instruction tendered by Appellant. This point is denied.

### E. Instruction No. 6

█ In Appellant's fifth point, she claims that the trial court erred in submitting Instruction No. 6 in that it was inconsistent with Section 575.150 by failing to instruct the jury that the officers had to act lawfully in arresting, stopping, or detaining her before she could resist arrest as that offense is defined by Missouri law.

Appellant objected to the second paragraph of Instruction No. 6, contending that it was not supported by the evidence, and in her motion for new trial she contended that the trial court erred in submitting the instruction because it was an "improper statement of the law." She contends under this point that "[s]tate law includes as an essential element of the crime of resisting arrest that the officer be making an arrest, which under State law and both the Missouri and United States Constitutions must be based upon probable cause, or be attempting to lawfully detain or stop an individual or vehicle." Continuing, she argues that "[t]hrough Instruction No. 6 the jury was made to believe that the officers could act unlawfully, without probable cause or lawful authority to arrest."

█ Assuming, without deciding, that the record contains a sufficient preservation of the issue raised in this point, Appellant's contention is without merit. First, ordinarily, where an MAI instruction addresses a given issue, it must be given to the exclusion of any other instruction unless it conflicts with the substantive law. *Edwards*, 60 S.W.3d at 612. Instruction No. 6 was patterned after MAI–CR 329.60.2, the approved instruction for resisting arrest by the use of violence or physical force.

Appellant's contention that this instruction is in conflict with substantive law because it failed to inform the jury that it had to find that she was arrested as defined by State law and the Missouri and United States Constitutions is not well taken. This argument is essentially a restatement of that considered under Appellant's Point IV. As we discussed there, it is not essential to a conviction for resisting arrest that the arrest itself be lawful. Section 575.150.4 specifically provides that it is no defense to a prosecution for resisting arrest by the use of physical force that the officer was acting unlawfully in making the arrest. This is consistent with *Briggs*, 435 S.W.2d at 365, where it was said that it "would tend to lead to a breakdown of law enforcement to excuse one for fighting with an officer and resisting arrest on the ground that the ordinance or law under which he is being arrested is unconstitutional or invalid." Appellant cites no authority requiring a different result under the circumstances of this case. Accordingly, this point is denied.

### F. Prohibition of Evidence of Right to Resist Arrest or Refuse to Exit Vehicle

In her sixth point, Appellant alleges that the trial court erred "in prohibiting [her] from presenting evidence as to her

right to resist arrest and/or to refuse to exit her vehicle in granting the State's motion in limine, prohibiting such evidence at trial, limiting [her] closing argument, and in denying [her] motion for a new trial premised on this error." The focus of Appellant's contention under this point is multifarious. Despite the proscription in cases such as *Lamar Advertising of Missouri, Inc. v. McDonald*, 19 S.W.3d 743, 745 (Mo.App. S.D.2000), against points relied on that group multiple contentions not related to a single issue, we will attempt to decipher the contentions under this point and respond to them.

In the argument portion of her brief, Appellant initially refers to a ruling made by the trial court on a motion in limine filed by the State. In that ruling, entitled "Interlocutory Order," Appellant, her counsel and witnesses were precluded from any argument, questions or evidence pertaining to "[t]he right of [Appellant] to resist any arrest." The order also provided that "[i]f [Appellant] wishes to raise any of these issues for the record, she shall request an on-the-record conference out of the presence of the jury."

To the extent that Appellant's point is based on the trial court's ruling on the State's motion in limine, it is not well taken. She argues that "this ruling prohibited [her] from presenting evidence, eliciting testimony or offering argument that failing to exit a vehicle or providing a driver's license at an officer's direction does not constitute resisting arrest." A ruling on such a motion is interlocutory in nature and, by itself preserves nothing for appeal. *State v. Garrett*, 139 S.W.3d 577, 584 (Mo.App. S.D.2004). The proponent of the evidence must attempt to introduce the evidence and, if it is excluded, must make an offer of proof to properly preserve the question for appellate review. *State v. Yole*, 136 S.W.3d 175, 178 (Mo.App. W.D.

2004). Additionally, Appellant fails to direct us to any place in the record where she attempted to present evidence on this issue. In fact, she says that the "officers had already testified that Appellant was resisting arrest from the moment she refused to obey their order to exit the vehicle." Of the four citations to the record in support of that contention, three of them involve answers elicited by Appellant's counsel on cross-examination without objection, and one involves testimony in response to questions from the State, again without objection.

In the argument section of Appellant's brief, it appears that the essence of her contention under this point is that she was prevented from arguing that the failure to exit a vehicle or provide a driver's license at an officer's direction does not constitute resisting arrest. In support, she points to a portion of her attorney's closing argument which included the following:

> [Appellant's counsel]: ... Now, remember, resisting arrest. First of all, here it is. And, again, you'll have a chance to take these instructions back so if you miss some of this, ... But, anyhow, you'll be able to take these back with you into the jury room. But this has to be—You can't resist arrest, folks, by sitting there. You can't resist arrest. If a police officers [sic] says to you "Give me your driver's license—"
>
> [State's attorney]: You know, I object. That's a misstatement of the law.
>
> [The Court]: Counsel, please approach.
>
> . . . .
>
> [Transcriber's note]: Indiscernible sidebar.
>
> (Proceedings returned to open court.)
>
> [The Court]: The Court's going to sustain the objection. And remind

the jury to apply the law as I have instructed and that will be in the instructions provided to you.

 We are unable to tell from this record exactly what Appellant's counsel was attempting to argue. Appellant now argues that because the trial court sustained the State's objection to her argument, "the jury could not possibly know what was the correct statement of the law was [sic] because the trial court had taken both sides on this issue." She also argues that she was not allowed to present relevant and competent evidence, and argument based upon that evidence, to "correctly define the law applied in the case." Appellant, however, fails to recognize that the "correct statement of the law" comes from the trial court's instructions to the jury. In that vein, Appellant's counsel continued his argument with the following:

> [Appellant's Counsel]: Thank you. The fourth paragraph is that [Appellant] resisted by using violence or physical force. That's the law that was just given to you. Violence or physical force. That's the nature of the resistance.
>
> What the State has said to you is the nature of that resistance is grasping onto the steering wheel. Remember when Sims was there and he showed you, he showed you how this happened, and he did it just like this; grasping the steering wheel with both hands. That's what he attributed the behavior of [Appellant].

It is obvious that her counsel was referring to the verdict directing instruction that authorized a finding of guilt of resisting arrest upon a finding, among others, that "for the purpose of preventing the law enforcement officers from making the arrest, [she] resisted by using violence or physical force." It is clear that the instruction did not authorize a finding of guilt by merely sitting in the car; instead it required a finding that Appellant resisted arrest by the use of violence or physical force. We fail to see how Appellant was prejudiced in the manner presented in this point. The point is, therefore, denied.

### G. Exclusion of Medical Evidence

 In her seventh point, Appellant claims the trial court erred by sustaining the State's motion in limine which prevented her from presenting medical evidence of injuries she sustained after being stopped by the officers. This evidence, she claims, was relevant to whether she was resisting arrest or "simply trying to prevent unlawful harassment and/or assault at the hands of the law enforcement officers who stopped her."

The State filed a motion in limine requesting that the trial court "exclude any and all argument, questions, or evidence, in whatever form, regarding the medical treatment and detention of [Appellant] following her arrest because such evidence is not relevant to any issue the jury must decide in this case." The trial court entered an interlocutory order prohibiting Appellant from any argument, questions, or evidence, in whatever form, as it pertains to the following: "3) The medical treatment and detention of [Appellant] subsequent to her arrest."

As pointed out above, a motion in limine is interlocutory in nature and, by itself, preserves nothing for appeal. *Garrett,* 139 S.W.3d at 584. At trial, Appellant testified about her injuries and introduced photos of them. The State did not object to any of this evidence. Although she argues that "she was prohibited from corroborating this testimony and evidence with medical evidence to support her claim," she fails to direct us to any portion of the record, other than the interlocutory order in limine, where she attempted to introduce

any additional evidence or made offers of proof about the same. As a result, Appellant has preserved nothing for our review. Her seventh point is denied.

### H. Sims' Seat belt Testimony

■ In her eighth point, Appellant claims that the trial court erred by allowing Sims to testify that her efforts to release her seat belt did not interfere with her exiting the vehicle after he testified that he did not know whether she was wearing a seat belt. She claims that this was speculation on the part of Sims to impermissibly bolster the State's claim that she resisted arrest.

During the State's direct examination of Sims, the following exchange took place:

Q: Okay. Let me ask you this. Do you recall at the time that you removed her from the vehicle whether she had her seatbelt [sic] on?

A: I don't remember. I don't believe so, but I don't remember that.

Q: Did you see her make any effort to try and remove her seatbelt [sic]?

A: No.

Q: Did you have to remove her seatbelt [sic] before exit—her exited—having her exit the vehicle?

A: No

Q: All right. Did a seatbelt [sic] in any way impede her ability to exit the vehicle?

A: No.

[Appellant's Counsel]: Well, let me object to that. How could he know that if he didn't know whether or not she had a seatbelt [sic] on. It would be speculative and conjectural.

The Court: I'll overrule the objection.

A: No.

Appellant later testified that after Sims broke open the window and told her to get out of the vehicle, she had her cellular phone in one hand, her wallet in her other hand, and her seat belt was on. She said that while she was trying to unbuckle her seat belt, he yanked her so hard that it cut into her. The audiotape of her cell phone conversation with her friend contains Appellant's statements telling the officers, "Just a minute" several times. She claims that was said while she was trying to remove her seat belt, and that it was after she got the seat belt off and as she was trying to get out of the vehicle that Sims kicked her.

Appellant's argument under this point is that because Sims said he didn't know if she was wearing a seat belt, his testimony that a seat belt did not impede her in getting out of the vehicle was pure speculation. She says that if she was attempting to get out of her seat belt when the officers took her out of the vehicle, she could not have been "grabbing" the steering wheel as they testified. Conversely, she contends that if she was attempting to get out of her seat belt when the officers took her out of the vehicle, it becomes more likely that the "grabbing" of the steering wheel the officers testified to was a reflexive action in response to their "aggression" and not a voluntary act. She concludes that if she was trying to get out of her seat belt when she was taken from the vehicle, she would not have been guilty of resisting arrest.

■ Obviously, Appellant did not have a seat belt on when the officers actually removed her from the vehicle. Nevertheless, the statements by Sims could be construed as containing inconsistencies. Appellant was free, however, to point those out and argue to the jury in closing that they adversely affected the credibility of Sims. Questions of the credibility of a witness and the effects of conflicts or inconsistencies in the testimony of any witness

are questions for the jury. *State v. Stiegler,* 129 S.W.3d 1, 5 (Mo.App. S.D.2003).

The trial court has broad discretion in the admission or exclusion of evidence at trial. *State v. Bryan,* 60 S.W.3d 713, 718 (Mo.App. S.D.2001). Absent a clear abuse of discretion by the trial court, this Court will not disturb the trial court's ruling concerning the admission or exclusion of evidence. *Id.* We find no abuse of discretion concerning the matter raised by Appellant in this point. It is, therefore, denied.

## I. Cumulative Effect of Errors Mandates Reversal

In her ninth and final point, Appellant contends that the numerous errors set forth in her Points II through VIII require reversal because of the cumulative prejudicial effect. She bases her argument on the case of *Faught v. Washam,* 329 S.W.2d 588, 604 (Mo.1959) (*overruled on other grounds Tune v. Synergy Gas Corp.,* 883 S.W.2d 10 (Mo. banc 1994)), which found reversible error in the totality of the errors addressed without deciding whether any one error would alone warrant reversal.

The State responds that Appellant did not raise this issue in her motion for new trial, and therefore it is not preserved for appeal and can be reviewed for only plain error. Furthermore, it contends that there was no cumulative error because there was no error.

As Appellant did not raise her claim of error in her motion for new trial, our review is only for plain error. *State v. Taylor,* 123 S.W.3d 924, 929 (Mo.App. S.D. 2004). We will only grant relief if Appellant's substantial rights are so affected as to result in a manifest injustice or miscarriage of justice. *Id.;* Rule 30.20. We do not find that any of Appellant's points

warrant relief. We further find that any error that may have occurred at trial did not result in a manifest injustice or miscarriage of justice towards Appellant. Appellant's ninth point is denied.

We find Appellant's points to be without merit and, therefore, affirm the judgment of the trial court.

PREWITT, J., concurs in concurring opinion of RAHMEYER, J.

RAHMEYER, J., concurs in separate opinion.

NANCY STEFFEN RAHMEYER, Judge, concurring.

I reluctantly concur that Appellant has raised no issue in this appeal that would require a reversal of the conviction for resisting arrest. In saying that, I add that my agreement in no way condones the disturbing events set forth in the record. I can think of no reason why a sheriff's department would post a law-abiding citizen's picture in its office, in what appears to be retaliation for the performance of her duties as a physician. The testimony that a police officer followed this same physician for ten miles at one o'clock in the morning in a rural area is also unsettling. That the police officers knew who they had stopped prior to this incident and referred to her as Dr. Miller, despite the fact that there was no designation of her title on her license, is disquieting. Law enforcement officials should certainly be sensitive in this day to the fact that women have been the targets of abductions by persons claiming to be police officers; however, I agree with the prosecutor in this case that this trial and subsequent appeal were simply not the forums to address any inappropriate behavior of law enforcement officials.

Appellant, however, raised two issues that concerned me. Appellant's second point, that the trial court erred in overrul-

ing her motions for judgment of acquittal on the crime of resisting arrest, has facial appeal because the jury acquitted Appellant on all of the underlying traffic violations. I must conclude that the jury could have rejected the testimony of Officer Moehle, which formed the only evidence as a basis for any of the traffic violations, but, in the light most favorable to the verdict, there was sufficient testimony through Officer Sims and, more importantly, Officer Edwards, that Appellant resisted arrest by grabbing the steering wheel and struggling with the officer as he tried to arrest her. That is the jurors' prerogative. The jury determines the credibility of the witnesses, resolves conflicts in the testimony and weighs the evidence. *State v. Pond*, 131 S.W.3d 792, 794 (Mo. banc 2004).

The issue of whether the mere grabbing of the steering wheel is sufficient evidence of resisting arrest is more troubling; however, I concur that we are obligated to follow the precedent of *State v. Belton*, 108 S.W.3d 171, 175 (Mo.App. W.D.2003). I do not concur that *Belton* did not expand the definition of "physical force" beyond prior cases. As noted in the main opinion, *Belton* suggests that a defendant uses physical force in resisting an officer's arrest by exerting strength and power of his bodily muscles to overcome the officer's attempts to pull him from the car. *Id.* It is for our supreme court to determine if grabbing the steering wheel is sufficient evidence of "physical force" to sustain a conviction of resisting arrest.

Appellant's third point involved proffered Instruction No. B. It is clear that the issue of whether Appellant's alleged failure to physically hand her driver's license to the officers constituted a resisting of arrest was injected into the case, however, Appellant did not request nor does she appeal the denial of a proper withdrawal instruction. Officer Edwards testified that

Officer Sims advised Appellant that she was "resisting" arrest immediately after Officer Sims told her she was under arrest and even prior to any grabbing of the steering wheel by Appellant. Although the jury may have been confused whether Appellant was resisting arrest for failing to produce her driver's license upon demand of a police officer or for failing to quickly exit the car, proffered Instruction No. B. was properly rejected by the trial court as an incomplete statement of the law. *See State v. Kennedy*, 894 S.W.2d 723, 728 (Mo.App. S.D.1995) (finding that trial courts do not err by failing to give an incorrect instruction.)

I concur in the result of affirming the judgment.