**STATE of Missouri, Respondent,**

v.

**Cheryl J. CALDWELL, Appellant.**

**No. WD 73194.**

Missouri Court of Appeals, Western District.

Nov. 8, 2011.

Margaret M. Johnston, Assistant State Public Defender, Columbia, MO, for Appellant.

Thomas K. Hendrix, Jr., Assistant Prosecuting Attorney, Warrensburg, MO, for Respondent.

Before Division II: MARK D. PFEIFFER, Presiding Judge, and VICTOR C. HOWARD and JAMES EDWARD WELSH, Judges.

MARK D. PFEIFFER, Presiding Judge.

Cheryl J. Caldwell ("Caldwell") appeals the Judgment of the Circuit Court of Johnson County ("trial court"), after having been found guilty by a jury of the class B misdemeanor of trespass in the first degree, § 569.140, RSMo 2000, and the class A misdemeanor of resisting arrest, § 575.150, RSMo Cum.Supp.2007. On appeal, Caldwell asserts that the State did not present sufficient evidence to convict her of either offense. We agree and reverse the Judgment of conviction.

**Facts and Procedural History[1]**

Caldwell was charged by Information with trespass in the first degree for knowingly remaining unlawfully upon real property located at 160 N.W. 251, Warrensburg, Johnson County, Missouri,[2] and possessed by the University of Central Missouri ("University"), after being given actual notice of such trespass; and with resisting arrest by refusing to exit her vehicle at the request of an officer. A jury trial was held on September 20, 2010. The uncontested evidence at trial was as follows:

The State's charges derived from an incident occurring on May 13, 2008. Caldwell was a new student at the University studying for a master's degree in aviation and had a class on that date at the Central Missouri Skyhaven Airport a/k/a the Max B. Swisher Airport ("Airport"). Airport hours of operation were 7:00 a.m. to 9:00 p.m., and the only vehicles that were allowed on the property after 9:00 p.m. were those of people in the airplanes served by the Airport or otherwise serving those flights at the Airport. Adam Freeman, a dispatcher at the Airport, called the University Public Safety Department to report that an occupied vehicle had been parked in the Airport parking lot for over three hours and that he had not been notified that anyone was taking flight training and was cleared to be on the Airport premises.

Officer Gary Schmidt, a uniformed police officer with the University Public Safety Department, responded to Freeman's call about 7:34 p.m. It was dusk but still light out when Schmidt approached Caldwell's vehicle. Her window was rolled halfway down; Schmidt asked Caldwell what she was doing. She mumbled something; Schmidt told her he couldn't understand her and asked her to roll down her window further so they could communicate. She took out a university planner calendar and wrote on the back, "I'm studying." Schmidt told her he did not mind if she was studying but that she could not study at the Airport after the Airport was closed. Caldwell responded, "This isn't university property. This isn't campus." Schmidt told her it *was* University property.[3] After receiving little fur-

---

1. We view the facts in the light most favorable to the verdict. *State v. Simmons*, 955 S.W.2d 752, 758 (Mo. banc 1997).

2. Prior to closing argument by the prosecuting attorney, the Information is the last time this address was mentioned in this case—forming the basis of Caldwell's argument that

the State failed to present sufficient evidence to convict her of the offense she was charged with.

3. While this testimony is sufficient evidence to satisfy the State's burden that the property where Caldwell's car was parked was owned by the University and, thus, the reasonable

ther verbal communication from Caldwell, Schmidt left to return to his normal patrol in the city around the University. He informed Freeman that he would return after the terminal closed to see if Caldwell was still there.

After the Airport closed, Schmidt came back with another officer at 10:16 p.m. Schmidt shined his vehicle lights and spotlight on Caldwell's car. Caldwell's vehicle was still parked at the Airport with all the windows rolled up. She refused to communicate with the officers. The officers informed her approximately forty times that she needed to leave the Airport and that if she needed to stay in her car, she needed to find someplace else to park.

The officers asked her to exit her vehicle five times before arresting her. Caldwell continued to refuse to exit her locked vehicle. The officers called the Warrensburg Police Department to the scene to use a tool to unlock Caldwell's car so she could be taken into custody. Corporal Dustin Mayden, evening shift supervisor of the Warrensburg Police Department, arrived about 11:25 p.m. He used a "Slim Jim" lockout tool to unlock Caldwell's car and Caldwell was taken into custody. Noticeably absent from the State's case in chief is any further evidence about *how* Caldwell was taken into custody. There was no evidence that Caldwell was violent or threatened violence to the officers before being taken into custody. There was no evidence that Caldwell used physical force or threatened the use of physical force to remain in her car and refuse to be taken into custody. There was no evidence that

Caldwell attempted to flee from the officers. Instead, there is simply no evidence whatsoever about the circumstances surrounding Caldwell's custodial arrest after her car door was unlocked with the use of the lockout tool.

Caldwell orally moved for judgment of acquittal at the close of the State's evidence and at the close of all the evidence. Both motions were denied. The jury found Caldwell guilty of trespass in the first degree and resisting arrest. After trial, Caldwell filed a motion for judgment of acquittal notwithstanding the verdict of the jury or, in the alternative, for a new trial, assigning as error the trial court's failure to grant Caldwell's motions for acquittal, thereby preserving the issue for appellate review. The trial court entered its Judgment on the jury's guilty verdicts, sentencing Caldwell to thirty days in jail on each count, with the sentences to run concurrently. Caldwell appeals.

### Standard of Review

In Points I and II, Caldwell challenges the sufficiency of the evidence to support her convictions for trespass and resisting arrest. She argues that the trial court erred in overruling her motion for judgment of acquittal on both charges. Rule 27.07(a) provides that "[t]he court on motion of a defendant ... shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or

inference is that the Airport is owned by the University—Caldwell was not charged with trespassing at "the Airport" or on any property identified in the Information as "University property." She was charged with trespassing upon "real property located at 160 N.W. 251." There was no testimony or evidence in the trial that the Airport was located at 160

N.W. 251 nor any testimony or evidence that 160 N.W. 251 was "University property." The first time that 160 N.W. 251 was mentioned in the trial was when the prosecutor mentioned the address and its connection as the address of the Airport *in closing argument.*

offenses." In reviewing a claim of insufficient evidence to support a criminal conviction, we are limited to determining whether there was sufficient evidence from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt. *State v. Belton,* 108 S.W.3d 171, 173 (Mo.App. W.D.2003). We accept all evidence and inferences favorable to the State and disregard all evidence and inferences to the contrary. *Id.*[4]

### Trespass

■ In Caldwell's first point on appeal, she asserts that the trial court erred in overruling her motion for judgment of acquittal at the close of all the evidence and in imposing judgment and sentence for trespass in the first degree because there was no evidence that the University owned or possessed property located at 160 N.W. 251, Warrensburg, Missouri, as charged in the Information and verdict director, or what property was located at that address. "A person commits the crime of trespass in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure or upon real property." § 569.140.1. A person does not commit the crime of trespass in the first degree by entering or remaining upon real property unless notice against trespass is given to the person either by actual communication or by posting. § 569.140.2. By charging Caldwell with knowingly remaining on address-identified real property possessed by the University, after notice against trespass by actual communication, the State assumed the burden of proving those facts.

■ "The essence of an action for trespass is violation of possession. Accordingly, to support an action for trespass, the party making the claim must have the legal right to possession." *Int'l Bhd. of Elec. Workers v. Monsees,* 335 S.W.3d 105, 108 (Mo.App. W.D.2011) (internal quotations and footnote omitted). When Officer Schmidt told Caldwell that she would have to leave the Airport premises when the Airport closed, she disputed that the Airport was in the possession of the University, saying, "This isn't university property. This isn't campus." Officer Schmidt specifically told her that it *was* University property. Therefore, the State proved that the University owned the Airport premises and thus had the legal right to the possession of the Airport premises where Caldwell was parked.

■ However, there was no evidence presented that identified *the address in the Information and verdict-directing instruction* as the Airport or that clarified whether Skyhaven Airport and Max B. Swisher Airport were names identifying the physical location represented by that address. In fact, there was no evidence presented tying "160 NW 251" to the Airport or any "University property."[5]

---

4. In Point III, Caldwell requests Rule 30.20 plain error review of the verdict-directing instruction for resisting arrest. Given our rulings on Points I and II in favor of Caldwell, we need not and do not address the merits of Caldwell's claim of instructional error in Point III.

5. Our ruling today is not to suggest that an address *must* be used in the Information. For example, in burglary cases, a "dwelling house" identified in a burglary Information is sufficiently charged and proven without an address as long as the "dwelling house" is sufficiently identified in the Information and proven through evidence at trial. *See State v. Sallee,* 436 S.W.2d 246, 251 (Mo.1969); *State v. Bussard,* 494 S.W.2d 401, 408 (Mo.App. 1973). Furthermore, as a general matter, "a variance between the charge and proof does not require a reversal unless it is material to the merits of the case and prejudicial to the defense." *State v. Harrell,* 342 S.W.3d 908, 920 (Mo.App. S.D.2011) (Information referring to armed criminal action by use of "dan-

While the prosecutor told the jurors *during closing argument* that the real property located at "160 Northwest 251" was owned by the University and was the Skyhaven Airport or Max B. Swisher Airport, such evidence was *not* adduced at trial.

■ Although prosecutors may comment on the evidence and the reasonable inferences to be drawn from the evidence, they may not imply knowledge of facts not before the jury. *State v. Ferguson*, 20 S.W.3d 485, 501 (Mo. banc 2000). Furthermore, "[a]rguments and statements of counsel are not evidence of the facts presented." *State v. Dowell*, 25 S.W.3d 594, 609 (Mo.App. W.D.2000) (internal quotation omitted). *See* MAI–CR 3d 302.06 (1–1–87) (stating that the arguments of counsel "are intended to help you in understanding the evidence and applying the law, but they are not evidence" (given as Instruction No. 9 in this case)).

Simply put, the prosecutor argued a fact not in evidence, and we do not believe that this is a case where the testimonial evidence allowed for a reasonable inference that the property address (i.e., as charged in the Information and used in the verdict-directing instruction) was that of the Airport (i.e., the real property identified in the evidence at trial). *See State v. Black*, 50 S.W.3d 778, 787 (Mo. banc 2001). Thus, there was not sufficient evidence to support her conviction for trespassing in the

first degree on the basis of the charge against her.

Point I is granted.

### Resisting Arrest

■ In Caldwell's second point on appeal, she asserts that the trial court erred in overruling her motion for judgment of acquittal at the close of all the evidence and in imposing judgment and sentence for resisting arrest because there was insufficient evidence to prove that she resisted arrest by using or threatening the use of violence or physical force or by fleeing from Officer Schmidt or any other law enforcement personnel at the scene of her arrest.

■ "A person resists arrest when: (1) [s]he knows or reasonably should know a law enforcement officer is making an arrest and (2) [s]he resists the arrest by using or threatening violence or physical force (3) for the purpose of preventing the officer from effecting the arrest." *State v. Orton*, 178 S.W.3d 589, 592 (Mo.App. E.D. 2005). Caldwell was charged in the Information with resisting arrest in that she "knew or reasonably should have known that the officer was making an arrest, and, for the purpose of preventing the officer from effecting the arrest, resisted the arrest ... *by refusing to exit her vehicle at the request of the officer.*" (Emphasis added.) Under section 575.150.1,[6] resisting

gerous instrument" was not a variance fatal to a verdict-directing instruction referencing armed criminal action by use of "a deadly weapon."). However, in this case, the Information did not charge Caldwell with trespass upon property sufficiently identified as the Airport or even "University property." Instead, it specifically charged her with trespass upon a specific physical address and that address was also used in the verdict-directing instruction, making the address a "material" element of the case that simply was not proven by the State in this case.

6. Section 575.150, RSMo Cum.Supp.2007, provides:

1. A person commits the crime of resisting or interfering with arrest, detention, or stop if, knowing that a law enforcement officer is making an arrest, or attempting to lawfully detain or stop an individual or vehicle, or the person reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or lawfully stop an individual or vehicle, for the purpose of preventing the officer from

arrest is a crime if the person being arrested resists by one of five separate means: "using violence, threatening to use violence, using physical force, threatening to use physical force, or by fleeing." *Belton*, 108 S.W.3d at 175. The issue Caldwell poses is whether, by refusing to exit her vehicle at Officer Schmidt's request, she was using or threatening the use of violence or physical force or was fleeing from the officer.

To answer this question, the case of *State v. Belton* is instructive. 108 S.W.3d at 171. Belton was a passenger in a vehicle that was stopped by a highway patrolman for traffic violations. *Id.* at 172–73. The officer saw Belton throw plastic bags out the car window before the car stopped; the officer told Belton that he was under arrest for littering and ordered him to get out of the car. *Id.* at 173. Belton initially complied but later got back into the car and refused to get back out. *Id.* The officer tried to pull Belton from the car but could not. *Id.* at 175. Belton was convicted of resisting arrest. *Id.* at 173. On appeal, we held that "[t]he jury could have reasonably concluded that Belton used physical force in resisting [the officer's] arrest by exerting the strength and power of his bodily muscles to overcome [the officer's] attempts to pull him from the car." *Id.* at 175. "This was sufficient evidence from which the jury could have concluded reasonably that Belton was guilty of violating § 575.150.1." *Id.*

Likewise, in *State v. Miller*, 172 S.W.3d 838 (Mo.App. S.D.2005), the driver was convicted of resisting arrest. Miller was stopped by a deputy sheriff for speeding and refused to roll down her window and produce her driver's license and refused to exit the vehicle. *Id.* at 842. The deputy called for assistance; when assistance arrived, the officers used a "Slim Jim" lockout tool to attempt to open the passenger side door. *Id.* Miller grabbed the tool, preventing the officer from unlocking the door. *Id.* at 843. After giving Miller another opportunity to get out of the vehicle, the officer broke the window, unlocked the door, opened it, told Miller that she was under arrest, and asked her to step out of the vehicle. *Id.* Miller refused and grabbed the steering wheel with both hands, trying to pull herself back into the vehicle while the officer was forcibly removing her. *Id.* The *Miller* court commented on the *Belton* decision, noting that *Belton* did not expand the definition of "physical force" to "include virtually any action or inaction that subjectively offends an officer." *Id.* at 846. Rather, the *Miller* court agreed with the *Belton* court's interpretation that the "physical force" necessary for a conviction under section 575.150.1(1) included nonviolent *force* in the form of the defendant's *physical resistance* to the officer's attempts to pull the defendant from the car. *Id.* (citing *Belton*, 108 S.W.3d at 174).

■ Thus, mere proof of a defendant's refusal to exit a locked vehicle when instructed to do so by a law enforcement officer, though ostensibly *offensive* to the arresting officer, is not sufficient to establish the "physical force" necessary for a conviction under section 575.150.1(1). The State presented no evidence that Caldwell exerted any physical force, violent or nonviolent, in resisting Officer Schmidt's ar-

effecting the arrest, stop or detention, the person:

(1) Resists the arrest, stop or detention of such person by using or threatening the use of violence or physical force or by fleeing from such officer; or

(2) Interferes with the arrest, stop or detention of another person by using or threatening the use of violence, physical force or physical interference.

rest. In fact, there was no evidence whatsoever as to Caldwell's actions after the officers unlocked the doors to her vehicle.

Point II is granted.

## Conclusion

The Judgment of conviction is reversed, and Caldwell is discharged.

VICTOR C. HOWARD, Judge, and JAMES EDWARD WELSH, Judge, concur.