EDWARD R. ARDINI, JR., JUDGE
Shaytwin Smith ("Smith") appeals his conviction for the class A misdemeanor of resisting arrest following a jury trial in the Circuit Court of Randolph County, Missouri, arguing that the trial court erred in overruling his motions for judgment of acquittal. Smith alleges that the State failed to present evidence that he used or threatened to use physical force prior to his arrest. Based on the Missouri Supreme Court's recent decision in State v. Ajak , 543 S.W.3d 43 (Mo. banc 2018), we find that law enforcement officers established "control over [Smith's] movements" when he was handcuffed, at which point his arrest was completed for purposes of section 575.150.1(1).[1] Because the evidence was insufficient to show that Smith's conduct prior to his arrest being effectuated involved *62 the use or threatened use of violence or physical force or that he attempted to flee from the officers, the judgment of the trial court is reversed.
FACTUAL AND PROCEDURAL BACKGROUND[2]
Following an investigation into a traffic incident, Huntsville Officer Nathan Howard and Trooper James Rowe of the Missouri State Highway Patrol went to Smith's home to arrest him for driving while suspended and leaving the scene of an accident. When they arrived, Smith was on his front porch. Officer Howard informed Smith that he was being placed under arrest and specified the underlying offenses. Smith was not cooperative, asking, "What's the proof?" and informing the officers that he was recording them. Smith was commanded to stand up, turn around, and place his hands behind his back. Instead, he stood up, removed his shirt, and threw a knife to the ground while yelling statements such as "I'm not going to jail" and extending his arms to the side.
According to Trooper Rowe, Smith presented "passive resistance" by failing to cooperate or obey the officers' commands and having an argumentative and agitated demeanor throughout the process. In response, Trooper Rowe applied pepper spray, which allowed the officers to gain control of Smith and apply handcuffs.
After being handcuffed, the officers began to escort Smith to Officer Howard's patrol vehicle. Smith purposely went limp and fell to the ground. After returning Smith to his feet and descending the porch stairs, Smith again purposely went limp but was caught by the officers. As the officers continued to walk him toward the patrol vehicle, Smith threw his body weight back and forth and wrapped his legs around Trooper Rowe's legs in an effort to trip the officer as he yelled about police brutality. As the officers attempted to place him in the patrol vehicle, Smith wrapped his legs around the door and pushed against it with his foot. Once placed inside the vehicle, Officer Howard held Smith down while Trooper Rowe went to the other side to latch the seatbelt.
A jury found Smith guilty of misdemeanor resisting arrest under section 575.150. This appeal follows.
STANDARD OF REVIEW
Our review "is limited to whether the State has introduced sufficient evidence from which a reasonable juror could have found each element of the crime beyond a reasonable doubt." Ajak , 543 S.W.3d at 46 (citing State v. Hunt , 451 S.W.3d 251, 257 (Mo. banc 2014) ). We "accept[ ] as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore[ ] all contrary evidence and inferences." Id. (citing State v. Zetina-Torres , 482 S.W.3d 801, 806 (Mo. banc 2016) ). We will not, however, "supply missing evidence or grant the State unreasonable, speculative, or forced inferences." Id. (citing State v. Lammers , 479 S.W.3d 624, 632 (Mo. banc 2016) ).
DISCUSSION
Section 575.150.1(1) provides that a person commits the crime of resisting arrest if, "knowing that a law enforcement officer is making an arrest" and "for the purpose of preventing the officer from effecting the arrest," the person "[r]esists the arrest ... by using or threatening the use of violence or physical force or by fleeing from such officer[.]" Accordingly, the State *63 must prove: "(1) knowledge that the law enforcement officer is making an arrest; (2) purpose on the part of the defendant to prevent the officer from effecting the arrest; and (3) resisting the arrest by threatening the use of violence or physical force or by fleeing from such officer." Ajak , 543 S.W.3d at 47 (citing § 575.150.1).
The Missouri Supreme Court announced in State v. Ajak that the definition of arrest found in section 544.180 applies to the offense of resisting arrest under section 575.150.1(1). Id. at 47-48. An arrest is thus the "actual restraint of the person of the defendant, or [his] submission to the custody of the officer, under authority of a warrant or otherwise" and not "a continuing process that may still be being 'effected' even after the arrestee is restrained and in the officer's control and custody." § 544.180 (defining arrest); Ajak , 543 S.W.3d at 51 (rejecting continuing process definition). "[T]he statute requires only restraint by the officer or submission to the officer's control." Id. at 49. "By contrast, if the defendant is not actually under the officer's restraint or control, the arrest has not been effectuated." Id.
Thus, "the critical element in determining whether the arrest ha[s] been effected is whether the officer had control over the defendant's movements ." Id. at 51 (emphasis added). "Each case requires a fact-specific inquiry to determine at what point the arrest is complete." Id. Once the arrest has been fully effectuated, i.e. , the defendant is under the officer's restraint or control, then he or she "should be considered to be in custody[,]" a "chronologically and legally separate event[.]" Id. at 51-52 (citing State v. Shanks , 809 S.W.2d 413 (Mo. App. E.D. 1991), overruled on other grounds by Joy v. Morrison , 254 S.W.3d 885 (Mo. banc 2008) ); see also § 556.061(7) ("[A] person is in custody when the person has been arrested but has not been delivered to a place of confinement.").
Ajak involved facts similar to the present case and guides our analysis. In Ajak , the defendant raised his hands as commanded by the officer but did not stop moving and was ultimately "handcuffed immediately after the officers entered the house." Ajak , 543 S.W.3d at 46, 51. He was walked to the kitchen and placed in a chair, where he remained handcuffed with one or more officers standing over him, although he continued to yell and scream. Id. Meanwhile, other officers at the residence spoke with the witnesses. Id. at 46, 51. Ajak was then informed that he was under arrest. Id. As Ajak was being walked to the patrol vehicle, he resisted by "jerking back and forth trying to break [the officers'] grip" and spitting at one of the officers. Id. The Missouri Supreme Court held that Ajak was actually restrained, i.e. , "completely under the officers' control[,]" when he was handcuffed in the kitchen. Id. at 51. Because Ajak's physical resistance "came only after the arrest was previously effected while in the officers' control within the kitchen[,]" his resisting arrest conviction was reversed. Id. at 51-52.
As in Ajak , the critical determination in this case is the point at which Smith was "completely under the officers' control[.]" See id. at 51. Smith alleges that this occurred at the time he was handcuffed on the porch. The State counters that Smith was not under arrest until the officers were able to secure him within the physical limits of the patrol vehicle and that, even if the arrest was effectuated at the time that Smith was handcuffed, his conduct prior to that time was sufficient to establish a threat of violence or physical force.
*64 The evidence at trial showed that Smith was pepper sprayed by Trooper Rowe because of his uncooperative behavior, which allowed the officers to gain control of Smith's movements and apply handcuffs. The totality of the circumstances compels the finding that the arrest was completed and Smith was "completely under the officers' control" when he was handcuffed and surrounded by two officers. Cf. id. at 51 (holding that defendant was under arrest at the time that he was handcuffed, the officers had control of his movements, and he was informed that he was under arrest).
Having established that the arrest was completed at the time that Smith was handcuffed, we may only consider Smith's conduct up to that point in determining whether the State proffered sufficient evidence to support a conviction for resisting arrest. The evidence showed that during this time, Smith yelled at and took a step away from the officers, removed his shirt, held his arms out, and generally failed to comply with the officers' commands. Smith also removed a knife from his pants and threw it to the ground in a direction away from the officers. Smith did not run, touch either of the officers, or verbally threaten to harm the officers, and Trooper Rowe described Smith's conduct as "passive resistance."
Even when viewed in the light most favorable to the jury's verdict, Smith's conduct prior to being handcuffed did not constitute the offense of resisting arrest. Section 575.150.1(1) requires that a person resist an arrest "by using or threatening the use of violence or physical force or by fleeing from the officer." Smith's general refusal to comply with the officers' commands and uncooperative attitude is not sufficient to support a conviction for resisting arrest. Cf. State v. Caldwell , 352 S.W.3d 378, 384-85 (Mo. App. W.D. 2011) (holding that defendant's refusal to unlock car door and exit the vehicle was insufficient to support conviction for resisting arrest).
While Smith's pre-arrest conduct was insufficient to satisfy section 575.150.1(1), his conduct of going limp, throwing his body weight back and forth, and wrapping his legs around the officer after he was handcuffed placed the officers' physical safety at risk and involved the physical force necessary to support a resisting arrest conviction. Cf. State v. Miller , 172 S.W.3d 838, 843 (Mo. App. S.D. 2005) (holding that evidence was sufficient to support resisting arrest conviction where defendant used bodily force to prevent officer from pulling her out of car by gripping and hugging the steering wheel); State v. Belton , 108 S.W.3d 171, 175 (Mo. App. W.D. 2003) (holding that jury could reasonably conclude that defendant resisted arrest "by exerting the strength and power of his bodily muscles to overcome [the officer's] attempts to pull him from the car"). However, while this conduct may well be sufficient to constitute a criminal offense, under Ajak , that offense was not resisting arrest due to it having sequentially occurred after the officers had completed Smith's arrest. Cf. Ajak , 543 S.W.3d at 52 (finding that defendant's resistance while being walked to the car occurred while he was in custody rather than when he was arrested).
CONCLUSION
The judgment of the trial court is reversed.
All concur.

All statutory citations are to the Revised Statutes of Missouri 2000 as supplemented through December 31, 2017.

The record is viewed "in the light most favorable to the verdict." Ajak , 543 S.W.3d at 44 (citing Elliott v. State , 215 S.W.3d 88, 90 n. 4 (Mo. banc 2007) ).