

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD86250 |
| | ) | |
| V. | ) | OPINION FILED: |
| | ) | MAY 28, 2024 |
| BRIAN V. MILAZZO, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Randolph County, Missouri**
The Honorable James Maurice Cooksey, Judge

Before Division Four:  Gary D. Witt, Chief Judge, Presiding, Mark D. Pfeiffer, Judge and
Janet Sutton , Judge

Brian Milazzo ("Milazzo") appeals the judgment of the Circuit Court of Randolph

County, Missouri ("trial court"), convicting him, following a jury trial, of one count of

the Class A misdemeanor of interfering with an arrest, section 575.150.[1]  Milazzo was

sentenced to twenty-one days in the county jail and given credit for time served.  Milazzo

raises two points on appeal:  Point I, the trial court abused its discretion when it allowed

the jury to hear evidence that the passenger in Milazzo's vehicle ("Passenger") had active

arrest warrants as this evidence was legally and logically irrelevant; and Point II, the trial

---

[1] All statutory references are to the Revised Statutes of Missouri (2016), as updated by
supplement through 2022, unless otherwise noted.

court erred when it denied Milazzo's motions for judgment of acquittal because the evidence adduced at trial did not prove beyond a reasonable doubt that Milazzo took any action to physically interfere with Passenger's arrest. We reverse the judgment of conviction and sentence.

### Factual and Procedural Background[2]

On March 21, 2022, Trooper and Corporal were conducting a driver's license checkpoint in Moberly, Missouri. A 2000 red Dodge Dakota, driven by Milazzo, came through the checkpoint. Milazzo did not have his driver's license in his possession, but informed Trooper that he had a picture of his proof of insurance on his phone. Trooper asked Milazzo to pull over to the shoulder in front of Trooper's patrol car to keep the flow of traffic going. Once Milazzo pulled the vehicle over, Trooper began asking Milazzo identification questions which Milazzo answered. Trooper noticed neither Milazzo nor Passenger were wearing their seatbelts. At first Trooper was unsure if Milazzo's vehicle required passengers to wear a seatbelt, so after a brief inquiry with Department of Revenue, Trooper concluded passengers in the vehicle needed to wear a seatbelt. Subsequently, Trooper began to ask Passenger identification questions which Passenger ignored and did not respond on numerous occasions. Eventually, Trooper asked Milazzo to turn off the vehicle, and Milazzo complied. Trooper reached through the driver's side window and removed Milazzo's keys from the ignition and placed them in the truck bed

---

[2] We review the evidence in the light most favorable to the jury's verdict. *State v. Vandergrift*, 669 S.W.3d 282, 291 n.9 (Mo. banc 2023).

because Trooper did not want Milazzo and Passenger to leave; Trooper informed Passenger he was being detained.

At this point, Trooper was attempting to issue Passenger a citation for failure to wear a seatbelt; however, Trooper was unable to identify Passenger. Trooper requested Corporal to assist with the stop because Trooper "didn't feel comfortable with walking away from the vehicle and not keeping eyes on the two individuals that were in the truck." Corporal walked up to the passenger side of the vehicle, and Trooper informed him that he was trying to issue Passenger a citation, but was unable to do so because Passenger would not identify himself. Corporal asked Passenger numerous times to identify himself which he failed to do. Thus, Corporal informed Passenger that he was under arrest for not wearing a seatbelt.[3] Corporal could not physically reach Passenger as the vehicle was locked and the passenger side window was mostly closed. Corporal told Passenger to open the door and step out, but Passenger refused to comply. Corporal also asked Milazzo to unlock the car door and informed him that failure to do so would result in the officers breaking the window to remove Passenger from the vehicle; this request was given multiple times. Milazzo failed to take any affirmative steps to unlock the vehicle upon the Trooper's request and, thus, the Trooper took steps to break the window

---

[3] While neither party raises this issue on appeal, we note that failure to wear a seatbelt is an infraction with a maximum penalty of a fine in the amount of ten dollars and is not subject to the assessment of court costs or points against a person's driver's license. Section 307.178. The statute also specifically prohibits a person from being "stopped, inspected, or detained solely to determine compliance" with the seatbelt requirements. *Id.* "An infraction does not constitute a criminal offense and conviction of an infraction shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense." Section 556.021.1.

(even though Trooper had possession of the key to the vehicle and could have unlocked the passenger door using that key.

Corporal asked Trooper to come over next to him on the passenger side of the vehicle and to grab a "window punch." Once Trooper grabbed the tool for Corporal, Corporal broke the passenger side window and both officers reached into the vehicle. Corporal and Trooper had to physically unlock the passenger door from the inside. Ultimately, Passenger stepped out of the vehicle and the officers placed him in handcuffs. Once Passenger was secured in a patrol car, Trooper returned Milazzo's keys to him. Corporal then placed Milazzo under arrest for interfering with the arrest of Passenger because he failed to unlock the door when requested. Trooper and Corporal later at the station learned there were active arrest warrants for Passenger.

On February 27, 2023, prior to trial, Milazzo filed a motion *in limine* seeking to prohibit introduction of Passenger's arrest warrants into evidence, asserting this information was not relevant to Milazzo's charge, and the officers did not even learn of the warrants until after the arrest of Passenger had been completed. The trial court denied the motion. On March 9, 2023, a jury trial was held. At trial, three videos were played for the jury including Trooper's dash cam footage, a video from Milazzo's cellphone, and a video of Milazzo from inside Corporal's patrol car. The State called Trooper and Corporal to testify. As Corporal was testifying, Milazzo objected to testimony regarding Passenger's warrants and the trial court overruled the objection. At the close of the State's evidence, Milazzo moved for acquittal. The trial court denied the motion.

4

Milazzo also testified at trial. Milazzo testified he did not identify Passenger to the officers because they never asked him for Passenger's identity. Further, Milazzo asserted he did not know Passenger had active arrest warrants at the time of the incident; however, Milazzo knew Passenger had been arrested in the past. According to Milazzo, the power locks inside his truck were not working and had been broken for nearly two years prior to the incident. Milazzo testified that when he pulled his vehicle over during the checkpoint, the truck was already locked. Milazzo testified the only way he could have unlocked the passenger door was by reaching over Passenger, and "either flip the locking mechanism up, or pull the door handle, or get out of the vehicle and go around to the other side, get my keys back, and unlock it that way." Milazzo never informed the officers that the electric locks on his truck were inoperable.

An Auto Expert inspected Milazzo's truck and confirmed that the vehicle's locks automatically engaged at approximately ten miles per hour and they did not automatically unlock when the vehicle was placed in park or turned off. At no time at trial did the State present evidence suggesting that Milazzo had affirmatively locked his vehicle upon being stopped by Trooper—only that he had refused to affirmatively *unlock* the vehicle when asked to do so by Trooper. At the close of all evidence, Milazzo renewed his motion for judgment of acquittal, and the trial court denied the motion.

The jury found Milazzo guilty of interfering with an arrest. On March 20, 2023, Milazzo filed a motion for judgment of acquittal notwithstanding the verdict, or in the alternative, motion for a new trial. The trial court overruled Milazzo's motions. On April 24, 2023, the trial court followed the jury's sentencing recommendation and sentenced

5

Milazzo to twenty-one days in the county jail but awarded him credit for time served. This appeal follows.

**Standard of Review**

This Court reviews a trial court's ruling on a motion for judgment of acquittal in a jury-tried case to determine whether the State made a submissible case. *State v. Cross*, 672 S.W.3d 865, 866 (Mo. App. S.D. 2023). We review the evidence in the light most favorable to the State and must determine whether "any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 866-67 (internal citation and quotation omitted). This Court does not re-weigh evidence, but rather we accept "as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict and ignore all contrary evidence and inferences." *State v. Collins*, 648 S.W.3d 711, 718 (Mo. banc 2022) (internal citation and quotation omitted).

**Analysis**

Because Milazzo's second point raised on appeal is dispositive in this case, we need not address the first. Milazzo argues the trial court erred in denying his motions for judgment of acquittal because the evidence presented at trial did not prove beyond a reasonable doubt that Milazzo took any action to physically interfere with Passenger's arrest. Milazzo requests this Court to defer to the video evidence admitted at trial to resolve the contradictions between Trooper's and Corporal's testimonies about Milazzo's actions during the checkpoint. However, none of the three videos admitted at trial were included in the record on appeal, so we cannot consider this evidence. *See Day v. Hupp*,

6

528 S.W.3d 400, 412 (Mo. App. E.D. 2017). Upon our review of the evidence in the light most favorable to the judgment, we find the State failed to establish Milazzo interfered with Passenger's arrest by "physical interference" under section 575.150.1.

Under section 575.150.1, a person interferes with an arrest when: (1) he knows or reasonably should know that a law enforcement officer is making an arrest; (2) he interferes with the arrest by using or threatening the use of violence, physical force or physical interference; and (3) the interference is for the purpose of preventing the officer from effecting the arrest. Here, Milazzo was charged with interfering with the arrest of Passenger, in that the officers were "making an arrest of [Passenger] for the infraction of failing to wear a seatbelt," and Milazzo "knew or reasonably should have known that the officer(s) were making an arrest, and, for the purpose of preventing the officer(s) from effecting the arrest, [Milazzo] interfered with the arrest of [Passenger] by using *physical interference*." (emphasis added). The verdict director also instructed the jury that to find Milazzo guilty they had to find that he "interfered by using physical interference."

To begin, we must first determine when the arrest of Passenger was complete. In determining when there is an arrest, "the critical element . . . is whether the officer had control over the defendant's movements." *State v. Ajak*, 543 S.W.3d 43, 50 (Mo. banc 2018) (holding definition of arrest found in section 544.180 applies to section 575.150.1). Milazzo argues Passenger was arrested the moment Trooper took the keys from Milazzo as the officers were in control of Passenger because: (1) Milazzo and Passenger could not drive off in the vehicle; and (2) the officers remained "inches away" from the vehicle throughout the whole incident. Certainly, the officers had some control over Passenger's

7

movements because they had the keys to the vehicle; however, the arrest was not complete until Passenger was handcuffed as he was then "completely under the officers' control." *Ajak*, 543 S.W.3d at 50 (holding arrest was complete when defendant was handcuffed, told he was under arrest, and was surrounded by officers in an enclosed space); *see also State v. Smith*, 551 S.W.3d 60, 64 (Mo. App. W.D. 2018) (holding defendant's arrest was complete when he was handcuffed and surrounded by two officers). Following Milazzo's argument, every time police have a suspect inside a house that is surrounded by officers, the arrest of the suspect is complete. Thus, we must look at Milazzo's actions before Passenger was placed in handcuffs and under the officer's control to ascertain whether Milazzo interfered with the officer "for the purpose of preventing the officer from effecting the arrest[.]" Section 575.150.1.

Milazzo compares his actions during the checkpoint to that of the defendant in *State v. Caldwell*, 352 S.W.3d 378 (Mo. App. W.D. 2011). In *Caldwell*, this Court held Caldwell's mere refusal to exit a locked vehicle when instructed to do so, while "ostensibly *offensive* to the arresting officer," was not sufficient to establish the *physical force* necessary for a conviction for *resisting arrest* under section 575.150(1). *Id.* at 384. Although the actions between Milazzo and Caldwell are similar, the underlying convictions differ as Milazzo was convicted for interfering with an arrest of another by physical interference.

The caselaw on convictions under section 575.150.1 for interfering with the arrest of another by *physical interference* is not well developed, and the term "physical

8

interference" is not defined in the statute. In *State v. Meeks*, 427 S.W.3d 876, 881 n.3 (Mo. App. E.D. 2014), the Eastern District of this Court noted:

> Whatever constitutes "physical interference," we must presume it is something different than "physical force." *See* [*State v. Belton*, 108 S.W.3d 171, 175 (Mo. banc 2003)] (all words in statute presumptively have separate and individual meanings). And it would make sense if the legislature meant something less forceful by "physical interference" because one can impede the arrest of another without the exertion of any force.

"[W]here a term in a statute is not statutorily defined, we give the word its ordinary meaning as set forth in the dictionary, with preference shown to *Webster's Third New International Dictionary*." *Tinnin v. Modot & Patrol Emps. Ret. Sys.*, 647 S.W.3d 26, 36 (Mo. App. W.D. 2022). "Interference" is defined as "the act or process of interfering; something that interferes." *Interference*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/interference (last visited Apr. 25, 2024). More specifically, "interfere" is defined as "to interpose in a way that hinders or impedes." *Interfere*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/interfere (last visited Apr. 25, 2024). "Physical" modifies "interference" and thus, read together, "physical interference" means a person or thing that makes movement or progress difficult. In the context of section 575.150.1(2), a person convicted of interfering with the arrest of another by "physical interference" must take an affirmative act such as physically restraining the officer, actively concealing the person being arrested, placing a person or thing in between an officer's path or progression to impede the effecting of the arrest of another.

9

According to the State, Milazzo interfered with Passenger's arrest by physical inference because, as the driver of the vehicle, he was in control of the vehicle and failed to unlock the vehicle door after numerous requests. The State fails to cite to a single authority that supports its argument that Milazzo was required to take an affirmative act to assist the officers in effectuating the arrest, i.e., unlocking the vehicle doors, or be subject to criminal charges. We find Milazzo's lack of action in failing to unlock the door did not amount to "physical interference" under section 575.150.1.

Prior to Passenger's arrest, Milazzo failed to unlock the vehicle door upon the officers' requests. Clearly, the car door was a physical barrier as it blocked the officers from being able to access Passenger, making it more difficult to place him under arrest. However, Trooper possessed Milazzo's car keys for almost the entire duration of the incident, and thus Trooper could have easily unlocked the vehicle door to gain access to Passenger. At trial, there was no evidence, and the State does not argue that Milazzo intentionally or affirmatively locked the vehicle door when he became aware the officers were trying to arrest Passenger in an effort to impede the arrest. Neither officer testified that Milazzo took any affirmative action to impede the arrest, merely that Milazzo did not affirmatively act to assist them in effectuating the arrest by unlocking the vehicle door. The uncontradicted evidence was that Milazzo's vehicle automatically locked at ten miles per hour and did not automatically unlock when the vehicle was placed in park or stopped. While Milazzo's refusal to follow the officers' instructions when asked to unlock his vehicle may have offended the arresting officers, we do not find Milazzo's inaction to be sufficient to establish the "physical interference" necessary for conviction

10

under section 575.150.1.  *Cf. State v. Lovell*, 414 S.W.3d 577, 579 (Mo. App. S.D. 2013) (holding sufficient evidence to convict defendant of interfering with an arrest by threatening physical interference as he rushed toward and verbally harassed the arresting officer and "grabbed a makeshift shield" to block the officer's taser).

## Conclusion

The judgment of conviction and sentence are reversed, and Milazzo is discharged.

_____
Gary D. Witt, Chief Judge, Presiding

All concur

11